**WIRELINE, INC., a corporation,**
**Plaintiff,**

**v.**

**BYRON JACKSON TOOLS, INC., a/k/a**
**Byron Jackson Division—Borg-Warner**
**Corporation, a corporation, Defendant.**

**Civ. No. 447.**

United States District Court
D. Montana,
Billings Division.

July 29, 1964.

Supplemental Opinion Aug. 18, 1964.

Bjella, Jestrab, Neff and Pippin, Williston, N. D., and Kelly & Carr, Miles City, Mont., for plaintiff.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Billings, Mont., for defendant.

JAMESON, District Judge.

Defendant, Byron Jackson Tools, Inc., has moved the court for a summary judg-

ment, claiming that under the undisputed facts it is not a proper party defendant.

In this action, brought under 15 U.S.C. §§ 15 and 16, plaintiff seeks damages for alleged violations of the anti-trust laws of the United States and for a judgment enjoining the defendant from "entering into or continuing any conspiracy in restraint of trade or from illegally monopolizing any part of commerce, with respect to the business of oil well servicing according to the jet process methods".

The complaint alleges that plaintiff is in the oil well servicing business; that oil well drillers and producers require the "use of the jet process by service companies engaged in the oil well perforating business"; that defendant has or purports to have a group of patent rights relating to the jet process; that it was commercially necessary for plaintiff to be licensed by the defendant to use the jet process; that plaintiff acquired a license from the defendant on March 1, 1957; and the license is in violation of the anti-trust laws of the United States.

The complaint alleges further that the "defendant, Byron Jackson Tools, Inc. is a Delaware corporation and is a division of Borg-Warner Corporation, an Illinois corporation * * *, and it has been and at all times * * * mentioned was, engaged in the business of servicing oil wells"; and that the defendant Byron Jackson Tools, Inc. has qualified to do business in the State of Montana. Service was made upon the statutory agent designated by Byron Jackson Tools, Inc. for service of process.

Defendant Byron Jackson Tools, Inc. has moved for summary judgment on the grounds that the defendant Byron Jackson Tools, Inc. was not a party to the licensing contract; that Borg-Warner Corporation, the licensor, is a corporate entity separate and distinct from the defendant; that Borg-Warner Corporation has not transacted business within Montana, and this court lacks jurisdiction over Borg-Warner Corporation; and that plaintiff seeks the same relief upon the same contract in an action against Borg-

Warner Corporation in the United States District Court in Dallas, Texas, where the court has acquired jurisdiction over the parties. Plaintiff resists the motion on the ground that there is a genuine issue of fact as to whether Byron Jackson Division, Borg-Warner Corporation and Byron Jackson Tools, Inc. "are one and the same person for the purposes of this law suit".

The parties have waived a hearing on the motion for summary judgment and have agreed that it be submitted upon the pleadings, admissions of the defendant (including letter to the court from counsel dated March 11, 1964), and affidavits and briefs filed on behalf of the respective parties.

The contracting parties are set forth in the licensing agreement as follows:

"THIS AGREEMENT, entered into and effective as of this 1st day of March, 1957, by and between BYRON JACKSON DIVISION, BORG-WARNER CORPORATION, an Illinois corporation having a Division office at Los Angeles, California, hereinafter referred to as the Licensor, and WIRELINE, INC., a Delaware corporation having its office and principal place of business at Williston, North Dakota, hereinafter referred to as the Licensee: * *"

The agreement was executed on behalf of the Licensor as follows:

"BYRON JACKSON DIVISION BORG–WARNER CORPORATION (LICENSOR)

By: /s/ Robert Harcus

Date 2/27/57

ATTEST:

John H. Schultz"

A corporate seal was affixed, reading "Byron Jackson Division, Borg Warner Corporation, Illinois Corporation."

It appears from the annual statement filed with the Secretary of State by Byron Jackson Tools, Inc. for 1957 that Robert Harcus was also a vice president, and John H. Schultz, secretary of that corporation.

It is undisputed that Byron Tools, Inc., a wholly owned subsidiary of Borg-Warner Corporation, was incorporated under the laws of Delaware on March 29, 1956, qualified to do business in Montana on May 18, 1956, and was properly served with process in this action; and that Borg-Warner Corporation has not qualified to do business in Montana, has not engaged in business in this state, and that no service of process has been made on this corporation. It is likewise undisputed that on January 2, 1964, Byron Jackson Tools, Inc. transferred its assets to Byron Jackson Co. (formerly B. J. Service, Inc.) and has been dissolved.

It appears from the affidavits filed on behalf of the defendant that Borg-Warner was incorporated in 1928 and subsequently expanded and diversified its business, absorbing many other companies. Among the companies absorbed was Byron Jackson Co., a Delaware corporation, acquired in 1955. The business of that corporation was continued as an operational division of Borg-Warner Corporation under the names of "Byron Jackson Division, Borg-Warner Corporation". It is described by the general counsel of Borg-Warner Corporation as a "functional, administrative or organizational device for carrying on certain of the operations of Borg-Warner Corporation and for operating properties owned by" the corporation. The administrative personnel of this and other divisions are given the titles of president, vice president and secretary instead of division manager and like terms. This is done "to give the individual greater prestige in the localities in which they operate", and the device "helps to make an operational division a separate unit for the most efficient handling of the company's widely diversified production line". These persons are not, however, officers of Borg-Warner Corporation unless specifically elected as corporate officers. The Board of Directors of Borg-Warner has authorized the signing of contracts in the name of the division of Borg-Warner Corporation.

The affidavits further recite that Byron Jackson Tools, Inc. was one of several separate corporate subsidiaries utilized by Borg-Warner Corporation; that there is "a functional and business purpose for such use", including the better handling of tax problems, corporate certifications and licensing in differing local situations, and through diversification making the overall services more efficient. Since 1957 Borg-Warner Corporation has had from 17 to 19 persons, and Byron Jackson Tools, Inc. from 4 to 5 persons, on their respective boards of directors. No director of Borg-Warner Corporation ever served as a director of Byron Jackson Tools, Inc. Borg-Warner Corporation had from 15 to 17 officers, and Byron Jackson Inc., from 8 to 10 officers. Four persons have served as officers of both corporations. The same persons who held the titles of president, vice president and secretary of Byron Jackson Division, Borg-Warner Corporation, were the officers of Byron Jackson Tools, and their salaries were paid by Borg-Warner Corporation. Field salesmen and other employees who carried on the business of Byron Jackson Tools, Inc. were paid by that corporation. The corporation conducted its own corporate meetings, kept minutes of the meetings, maintained separate records and filed separate corporate and tax returns.

The acquisition of Byron Jackson Co. by Borg-Warner Corporation in 1955 included the stock of B. J. Service, Inc., a subsidiary of Byron Jackson Co. Effective January 2, 1964, the name of B. J. Service, Inc., was changed to Byron Jackson, Inc., and as of the same date this corporation acquired all of the assets of Byron Jackson Tools, Inc. and certain facilities of Byron Jackson Division, Borg-Warner Corporation. On January 4, 1964, there was filed in the office of the Secretary of State of the State of Montana a certified copy of the amendment to the certificate of incorporation of B. J. Service, Inc. changing its name to "Byron Jackson Inc." and a consent by Byron Jackson Tools, Inc., to the change in name, the consent reciting that Byron Jackson Tools, Inc., has been dissolved and is withdrawing from the state.

One of the affidavits filed on behalf of the defendant recites that "Bryon Jackson Tools, Inc. at no time conducted the business known in the oil industry as oil well servicing and in particular was never engaged in conducting the jet process in Montana or elsewhere; that Byron Jackson Tools, Inc., conducted no licensing activities, jet process or otherwise, but on the contrary operated regularly and solely as a bona fide seller of oil field equipment \* \* \* ". The affidavit recites further that B. J. Service, Inc. (now Byron Jackson, Inc.) "acquired none of the jet process licensing business of Byron Jackson Division and is not and never has been engaged in jet process licensing".

Plaintiff has submitted a series of letters. The letterhead reads either:

"Since BJ 1872

BYRON JACKSON

Division of Borg-Warner Corporation

Mailing Address: P. O. Box 2017, Terminal Annex,
Los Angeles 54, California, U. S. A.

Executive Offices: 2301 E. Vernon Ave., Vernon, California
Telephone: LUdlow 7–6172   Cable Address: 'BYJAC'   All Codes"

or

"Since BJ 1872

BYRON JACKSON CO.

Since September 1, 1955; Byron Jackson Division,
Borg-Warner Corporation

Mailing Address: P. O. Box 2017, Terminal Annex,
Los Angeles 54, California, U. S. A.

Executive Offices: 2301 E. Vernon Avenue, Vernon, California
Cable Address: 'BYJAC' All Codes"

One of the letters (Exhibits A) was signed:

"Byron Jackson Division
Borg-Warner Corporation
By Robert Harcus
Executive Vice-President".

Another (Exhibit B) was signed:

"Byron Jackson Division
Borg-Warner Corporation
By Philip W. Scott
Vice President".

———◆———

A third (Exhibit H) was signed by V. C. Horner, who is also a vice president. Harcus, Scott and Horner were also vice presidents of Byron Jackson Tools, Inc.

Another letter (Exhibit G) was on the same letterhead, with the addition of the words, "Office of President". It was signed by Andrew W. Rose, who was also president of Byron Jackson Tools, Inc.

There is no reference to Byron Jackson Tools, Inc. in any of the letters.

Plaintiff has also submitted 14 of its checks, payable to "Byron Jackson Company", "Byron Jackson Corp.", "Byron Jackson" or "B. J. Corp." Ten of the checks bear the endorsement:

"Pay to the order of
AMERICAN TRUST COMPANY
Byron Jackson Division
Borg-Warner Corporation
Jet Process"

The remaining four checks bear this endorsement:

"50 Pay to the order of 50
SECURITY-FIRST NATIONAL
BANK OF LOS ANGELES
BYRON JACKSON DIVISION
BORG-WARNER CORP."

The address of Byron Jackson Division of Borg-Warner Corporation appearing on its letterheads is the same address as that of Byron Jackson Tools, Inc. appearing in the annual statements which were filed with the Secretary of State.

The foregoing summarizes the pertinent portions of the various affidavits and documents with respect to the relationship between Byron Jackson Division, Borg-Warner Corporation and Byron Jackson Tools, Inc. and its transferee, Byron Jackson, Inc.

Plaintiff's claim under the anti-trust law is clearly against the party or parties named in the licensing agreement. The agreement states that it is between plaintiff and "BYRON JACKSON DIVISION, BORG-WARNER CORPORATION". The defendant here, as named in the complaint, is "Byron Jackson Tools, Inc." Plaintiff alleges that Byron Jackson Division, Borg-Warner Corporation, and Byron Jackson Tools, Inc. are identical. Defendant claims it is a distinct entity, different from Byron Jackson Division, Borg-Warner Corporation, and not a party to the licensing agreement.

It is important, as counsel have suggested, to keep in mind the precise question presented. This is not a case where plaintiff has named the parent corporation as a defendant and seeks to obtain service upon the parent corporation through serving its subsidiary. Nor is it a case where the defendant corporation (Byron Jackson Tools, Inc.) has entered into a contract, and the plaintiff seeks to pierce the corporate veil, disregard the corporate entity, and hold individual stockholders or some other persons or corporation.

Here the contract and all negotiations and correspondence were between Byron Jackson Division, Borg-Warner Corporation and the plaintiff. Plaintiff contends, however, that Byron Jackson Tools, Inc. and Byron Jackson Division, Borg-Warner Corporation are the same, and that the contract was in fact entered into between the defendant Byron Tools, Inc. d/b/a Byron Jackson Division, Borg-Warner Corporation. If this were true, Byron Jackson Tools, Inc., would of course be liable for any breach of the contract or violation of the anti-trust laws. The question might then arise with respect to liability on the part of Borg-Warner Corporation.

Plaintiff has brought suit in Texas against Borg-Warner Corporation on the contract here in question, and no mention is made in that action of Byron Jackson Tools, Inc. If the allegations of the complaint in that action are sustained, Borg-Warner Corporation would be liable for breach of the contract or for violation of the anti-trust laws.

The reason for instituting the two actions is set forth in the affidavit of the president of plaintiff corporation as follows:

"Counsel stated that in his opinion it was clear that Byron Jackson Tools, Inc. was the signatory party to the license agreement, Exibit A, as Byron Jackson Division, Borg-Warner Corporation, and that this action was duly and properly instituted here. However, counsel stated that in his opinion and to be absolutely certain that the Statute of Limitations would not run against the company for its claim to damages if this Court should hold that this Defendant is not the same person as Byron Jackson Division, Borg-Warner Corporation, that the Plain-

tiff should commence an action in Houston, Texas, or in Dallas, Texas, where Borg-Warner Corporation had a statutory agent for service. After this matter was discussed with counsel, I instructed counsel to proceed to institute the action in Texas, notwithstanding that in our opinion the proper forum to try the action from a practical standpoint is this Court where the first action was commenced."

In Cannon Mfg. Co. v. Cudahy Co. 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, plaintiff Cannon, a North Carolina corporation, had a contract with the parent Cudahy Packing Company, a Maine corporation. It brought suit in North Carolina against the parent corporation and served the statutory agent of Cudahy Packing Company of Alabama, a wholly owned subsidiary. In affirming a judgment dismissing the action for want of jurisdiction, the Court said in part:

"The main question for decision is whether, at the time of the service of process, defendant was doing business within the state in such a manner and to such an extent as to warrant the inference that it was present there. (Citing case.) In order to show that it was, the plaintiff undertook to establish identity pro hac vice between the defendant and the Alabama corporation. The Alabama corporation, which has an office in North Carolina, is the instrumentality employed to market Cudahy products within the state; but it does not do so as defendant's agent. It buys from the defendant and sells to dealers. In fulfillment of such contracts to sell, goods packed by the defendant in Iowa are shipped direct to dealers, and from them the Alabama corporation collects the purchase price. Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches of departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws.

\*   \*   \*   \*   \*   \*

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. (Citing cases.) It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein.

" \*   \*   \*   The corporate separation, though perhaps merely formal, was real. It was not pure fiction." (267 U.S. 334–336, 45 S.Ct. 250–251).

See also Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., 9 Cir. 1951, 193 F.2d 158, and cases there cited.

In this case the plaintiff has not of course named the parent corporation as the party defendant. Rather it seeks to impose liability on the wholly owned subsidiary as the contracting party. The

rules laid down in Cannon, however, for determining whether the subsidiary is a distinct corporate entity are applicable.

It is recognized that the rule followed in Cannon may not be applicable where it appears from all of the evidence that the separate identities of the parent and its subsidiary have not been preserved within the limits set forth in Cannon, and the parent corporation has in fact been transacting business within the jurisdiction where suit is instituted. See, for example, Intermountain Ford Tractors Sales Co. v. Massey-Ferguson Ltd., D.Utah, 1962, 210 F.Supp. at 930. In that case the parent and subsidiary had common officers who did "not function at separate times and under separate circumstances with regard to the respective businesses", but rather met "together at a higher echelon to afford common direction to all North American operations of the company, and to lay down detailed instructions concerning the operation of company stores".

The facts here do not bring this case within the exception of Intermountain and similar cases. Rather the parent and its subsidiary are distinct corporate entities within the rule of Cannon. There is no evidence that the parent was transacting business in Montana; nor has the plaintiff attempted to serve the parent corporation.

■ Byron Jackson Tools, Inc. is a distinct corporate entity, even though wholly owned by Borg-Warner. It has a separate board of directors with no overlapping of directorships. It has distinct officers. Out of 15 to 17 officers of Borg-Warner and 8 to 10 officers of Byron Jackson Tools, Inc. only 4 have ever served as officers of both corporations. Byron Jackson Tools, Inc., has conducted its own meetings, kept minutes, maintained separate records, and has filed separate corporate and tax returns.

The name Byron Jackson Tools, Inc., does not appear in the licensing agreement or in any of the correspondence and other docments submitted by either party in this proceeding.

Plaintiff relies almost entirely on the identity between the so-called president, vice president and secretary of Byron Jackson Division, Borg-Warner Corporation and the officers of Byron Jackson Tools, Inc. These persons, however, were not officers of the parent corporation, nor is there evidence that the officers of Borg-Warner gave detailed instructions with respect to the operation of Byron Jackson Tools, Inc., as in the Intermountain case.

There is no claim of fraud or misconduct. Nor is there any suggestion that plaintiff was in any way misled or believed or had reason to believe that it was dealing with Byron Jackson Tools, Inc. All of the evidence is to the contrary, and shows that plaintiff was dealing with Byron Jackson Division, Borg-Warner Corporation.

■ The court of course recognizes that a summary judgment is proper only where there is no genuine issue of fact. Rule 56(c) F.R.Civ.P. It is recognized also that an issue of fact may arise from inferences which may be drawn from the evidence, and that all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Cameron v. Vancouver Plywood Corporation, 9 Cir. 1959, 266 F.2d 535, 539.

The relationship between Borg-Warner and Byron Jackson Tools, Inc., is clearly shown by the evidence. Viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the plaintiff, it cannot be said that there is any genuine issue of a material fact. The fact that the same persons were in charge of the operations of Byron Jackson Division, Borg-Warner Corporation and Byron Jackson Tools, Inc., is not in itself sufficient to raise an issue as to the separate identities of Borg-Warner Corporation and Byron Jackson Tools, Inc.

Byron Jackson Tools, Inc. may not be held liable for an obligation of Borg-Warner Corporation; nor may the court,

in this indirect manner, claim jurisdiction over Borg-Warner Corporation.

As noted supra, this motion for summary judgment was submitted by agreement of the parties without a hearing and without a pretrial conference. In view of this fact, I have concluded to give plaintiff an opportunity to submit any additional proof it may desire in support of its position.

It is hereby ordered that plaintiff is granted to and including August 10, 1964, within which to serve and file any additional evidence in opposition to defendant's motion for summary judgment. If no additional evidence is submitted by that date, summary judgment will be entered forthwith.

### Supplemental Opinion

In Memorandum Opinion and Order filed on July 24, 1964, counsel for plaintiff were given an opportunity to present additional proof in support of plaintiff's position that Byron Jackson Division, Borg-Warner Corporation and Byron Jackson Tools, Inc. are "one and the same person for the purposes of this lawsuit". Counsel have submitted a page from the Central Los Angeles Exchange telephone directory of June, 1963, from which it appears that

"BYRON JACKSON DIV BORG-WARNER CORP";

"BYRON JACKSON PUMPS INC"; and "BYRON JACKSON TOOLS INC", although separately listed, all have the same address and telephone number. This fact is accepted as true.

It does not appear to the court that there is any genuine issue of fact. The relationship between Byron Jackson Division, Borg-Warner Corporation and the defendant Byron Jackson Tools, Inc., is clearly shown by the evidence. The facts that the same persons were in charge of operations of Byron Jackson Division, Borg-Warner Corporation and Byron Jackson Tools, Inc., and that they had the same address and telephone number are not sufficient, in the light of the other evidence, to raise an issue as to their sep-

arate identities. It is clear from the evidence that the plaintiff was dealing with Byron Jackson Division, Borg-Warner Corporation. There is no evidence that plaintiff was misled or believed or had reason to believe that it was dealing with Byron Jackson Tools, Inc.

The motion for summary judgment is granted. Defendant will prepare, serve and lodge a form of judgment pursuant to Rule 11(b) of the Local Rules of Court.