CROW TRIBE OF INDIANS, and Patrick Stands Over Bull, as the Tribal Chairman of the Crow Tribe of Indians, Plaintiffs,

v.

MOHASCO INDUSTRIES, INC., a New York Corporation, and Big Horn Carpet Mills, Inc., a California Corporation, Defendants.

No. CV–75–24–BLG.

United States District Court,
D. Montana,
Billings Division.

Dec. 22, 1975.

with the Bureau of Indian Affairs and later with the Crow Tribe. At that time the parties negotiated a revision of the business lease in effect between the Crow Tribe and Big Horn. The business lease, when finally executed, contained the following language:

> "This AGREEMENT AND LEASE is made and entered into . . . this ___ day of December, 1968, between the Crow Tribe of Indians of Montana . . . (the "Tribe"), and Big Horn Carpet Mills, Inc., a California corporation (the "Company"), as operated (not, however, as a party hereto) by Mohasco Industries, Inc., a New York corporation, pursuant to the agreement referred to in Section I, paragraph 1 of this Agreement and Lease, . . . ."

In January 1969, Mohasco entered into an agreement with Big Horn, described as a management contract with a stock option. The agreement was intended to allow Mohasco to operate the Big Horn business, and to grant to Mohasco an option to purchase all of the capital stock of Big Horn.

In December 1971, Mohasco gave notice of exercise of the option to purchase Big Horn stock; following the purchase, Big Horn was a wholly-owned Mohasco subsidiary.

Big Horn continued to operate until June 1974, when the carpet mill operations were shut down. Thereafter, in January 1975, Big Horn refused to pay installments on the rent under the lease.

*ISSUE.*

Whether this Court has *in personam* jurisdiction over the defendant, Mohasco.

*DISCUSSION.*

Two key United States Supreme Court decisions are important in the discussion of *in personam* jurisdiction over the parent corporation. In the first case, *Cannon Manufacturing Company v. Cudahy Packing Company,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the question was whether at the time of service of process the defendant was doing business

---

William P. Fitzgerald, Cate, Lynaugh, Fitzgerald & Huss, Billings, Mont., for plaintiffs.

Stephen H. Foster, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for defendants.

### MEMORANDUM AND ORDER

BATTIN, District Judge.

Defendant Mohasco Industries, Inc. (Mohasco), has filed a motion to dismiss for lack of *in personam* jurisdiction, to quash the service of process, and to dismiss the complaint for failure to state a claim upon which relief can be granted.

*BACKGROUND FACTS.*

The Crow Tribe and Tribal Chairman brought this action against Big Horn Carpet Mills (Big Horn) and Mohasco for breach of a written lease dated April 22, 1969, whereby Big Horn agreed to lease a carpet-manufacturing facility at Crow Agency, Montana, and to employ Crow Indian Tribal members on the Reservation.

In September of 1968, representatives of Big Horn stockholders approached Mohasco with the proposal that Mohasco purchase such stockholders' interests in Big Horn. Mohasco subsequently met

within the state in such a manner and to such an extent as to warrant the inference that it was present there. The Supreme Court stated that a state does not have judicial jurisdiction over a foreign corporation simply by reason of the fact that it has judicial jurisdiction over its wholly-owned subsidiary if the formal separateness between the two entities has been carefully maintained. In other cases, jurisdiction over a subsidiary has been held to give a state jurisdiction over the parent corporation if the formal separateness between the two corporations has not been maintained by reason of the fact that the parent controlled the internal affairs of the subsidiary. *Handlos v. Litton Industries,* 304 F.Supp. 347 (E.D.Wis.1969). See Restatement, Second, *Conflict of Laws,* § 52.

The language of *Cannon* is important:

"Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other States. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations." *Supra,* 267 U.S. at 335, 45 S.Ct. at 251.

The Court further stated:

"Congress has not provided that a corporation of one State shall be amenable to suit in the federal court for another State in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein." *Supra,* at 336, 45 S.Ct. at 251.

The second case, *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), held that in order for due process requirements to be met, certain minimal contacts must exist such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*International Shoe* and following cases present three basic rules:

1) The nonresident defendant must do some act within the forum.

2) The cause of action must be one which arises out of the activities within the forum.

3) Having established by 1) and 2) a minimum contact, then assumption of jurisdiction must be consonant with the due process tenets of "fairplay" and "substantial justice." *L. D. Reeder Contractors of Arizona v. Higgins Industries,* 265 F.2d 768, 773 (9th Cir. 1959). Footnote 12.

Although the *International Shoe* concept is most widely accepted, it appears that at least in the Ninth Circuit, as to parent-subsidiary corporation relationships, the *Cannon* rule is followed.

Judge Jameson, in *Wireline, Inc. v. Byron Jackson Tools, Inc.,* 239 F.Supp. 955 (1964), relying upon the *Cannon* rule, found that there was no jurisdiction over the parent corporation since the subsidiary had conducted its own meetings, kept minutes, maintained separate records, and filed separate corporate and tax returns. This decision was affirmed by the Ninth Circuit, 344 F.2d 331 (1965), in which the Court stated that it found no basis for reversing the trial court's decision particularly in light of *Cannon.* The Ninth Circuit most recently has cited *Cannon* in *O. S. C. Corporation v. Toshiba America, Inc.,* 491 F.2d 1064 (1974). In dicta, both Judge Jameson and the Ninth Circuit approvingly cited *Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd.,* 210 F.Supp. 930 (D.Utah 1962). In *Intermountain,* the

Court attempted to deal with the *Cannon* rule:

"In *Cannon Mfg. Co. v. Cudahy Packing Co.,* supra, in holding that the parent company was not doing business through the subsidiary, the Supreme Court recognized that the parent company exerted its control both commercially and financially over the subsidiary and mainly through the same individuals as it did over those selling branches or departments of its business not separately incorporated. Has the separate identity of the two corporations been preserved here within the limits of that doctrine, or do the special circumstances pointed out above transcend permissible integration so as to require acceptance of the parent's control over the subsidiary as the direct channel by which the parent corporation is transacting business through its subsidiary in this district for the purposes of the Clayton Act." *Supra* at 937.

The Court, in finding jurisdiction over the parent corporation, stated:

"I am not unmindful that common officers and directors ordinarily may not be regarded as demonstrating an unacceptable commingling of operations. But here they do not function at separate times and under separate circumstances with regard to the respective businesses. On the contrary, by the device of the North American Operations, common officers of both meet together at a higher echelon to afford common direction to all North American operations of the company, and to lay down detailed instructions concerning the operation of company stores." *Supra* at 937.

It is clear that the prevailing rule in this Court and in the Ninth Circuit is the law established by *Cannon.* Thus, the issue becomes whether the formal separateness between the two corporations has been maintained or whether in fact the parent controls the internal affairs of the subsidiary.

Therefore, the relationship between Mohasco and Big Horn becomes important. The management duties assumed by Mohasco were contained in the management contract and option agreement. Basically, the contract contained the following:

1. Causing Big Horn to conduct the business with good business practices;
2. Maintaining Big Horn's assets and properties in good condition and repairs;
3. Performing all of Big Horn's obligations;
4. Furnishing Big Horn with operating capital and other assets;
5. Making available to Big Horn the employees of Mohasco;
6. Preserving the business organization and good will of Big Horn.

It appears that the relationship of management established by Mohasco over Big Horn during 1969 continued unchanged even after Big Horn became a wholly-owned subsidiary of Mohasco.

Within the first months of 1969, Mohasco appointed Mohasco employees to take over the Big Horn posts of general manager, plant comptroller, and general foremen. Later, Mohasco, voting the stock of Big Horn, elected five directors, employees of Mohasco, to the Board of Directors of Big Horn. These Big Horn directors then selected five officers for Big Horn, each of whom was an employee of Mohasco at the time of selection. After the appointment of the Mohasco employees to Big Horn, Mohasco continued to pay the wages of these employees. This was done so that the officers could still remain under the Mohasco benefit plans which were not offered by Big Horn. Mohasco was reimbursed for such payments and for the costs of such benefits by Big Horn.

With the execution of the lease, Mohasco guaranteed direct payment to the Crow Tribe of part of Big Horn's rent. Mohasco also loaned Big Horn working capital and other funds and assets. Big Horn officers dictated the interest and payment schedule on the notes, but evidently Mohasco voluntarily decided not

to charge Big Horn full interest on most of the loans. Mohasco also provided corporate manufacturing services to Big Horn but in many instances voluntarily did not charge the full value of these services.

In early 1974, a letter from the vice president of Mohasco, on Mohasco stationery, informed the Crow Tribe that the Big Horn Carpet Mills would discontinue operations effective July 12, 1974. Plaintiffs argue that the letter constituted notice to the Tribe of the last act of operation of the mill which inevitably had to precipitate a breach of the lease by nonpayment of the rent due six months later. Plaintiffs contend that this letter, in and of itself, constitutes the transaction of business within the state of Montana, which qualifies as a jurisdictional act under Rule 4(B)(1)(a).

 But when viewing the exact issue as presented by *Cannon,* it is clear that Mohasco did not control the internal or day-to-day affairs of Big Horn. Big Horn did not share any personnel in common with Mohasco, nor did the two corporations share any services provided by any officers, agents or employees. Further, the plaintiffs presented no evidence that Mohasco and Big Horn failed to maintain separate books and bank accounts.

Many of the financial transactions pointed out by the plaintiffs between Mohasco and Big Horn concern transactions which occurred before Big Horn became a wholly-owned subsidiary of Mohasco. Such acts cannot possibly give rise to an action since at that time Mohasco did not own the capital stock of Big Horn and could not be held liable as a stockholder of Big Horn.

The extension of credit, loan arrangements, business transactions and even the letter giving notice of discontinuation of operations, are nothing more than part of the ordinary business relationship between a parent and subsidiary and fall within the general and transactional control exercised by a parent corporation.

Since the formal separation has been maintained, this Court lacks *in personam* jurisdiction over Mohasco.

Therefore, it is ordered that the defendant Mohasco's motion to dismiss is granted.