**Harry A. WILLIAMS, Plaintiff,**

v.

**CANON, INC., a Japanese Corporation, et al., Defendants.**

No. 76–2412.

United States District Court,
C. D. California.

April 26, 1977.

378

Gary B. Lovell, Newport Beach, Cal., Donald R. Gail, Gustlin, Gail & McCabe, Los Angeles, Cal., for plaintiff.

Delson & Gordon, Norman Moloshok, New York City, Steven A. Wawra, Newport Beach, Cal., for defendants.

## OPINION

TAKASUGI, District Judge.

Personal jurisdiction and venue have been challenged in this action brought under the federal antitrust laws. Canon, Inc., the Japanese parent company of two other defendants,[1] has moved to dismiss on grounds that this court lacks personal jurisdiction and that venue in this district is improper under § 12 of the Clayton Act.[2] This court agrees and hereby dismisses the complaint as to the alien parent corporation, Canon, Inc.

Canon claims to be in a position identical to that of the Japanese parent corporation in *O.S.C. Corp. v. Toshiba America, Inc.,* 491 F.2d 1064 (9th Cir. 1974). That case holds that, absent proof of control and management by the parent, the parent corporation could not be deemed to be transacting business in the Central District of California solely because its wholly-owned subsidiary conducted business in the district. Affirming the lower court's decision, the Court of Appeals held that venue as to the parent was improper under § 12 of the Clayton Act. 491 F.2d at 1066.

Plaintiff Harry A. Williams began as a consultant to Canon U.S.A. in 1969, becoming an independent dealer for Canon calculators in 1971. Between 1971 and 1974 Canon U.S.A. gradually reduced plaintiff's exclusive territory from the 13 Western states to Orange County alone. Canon U.S.A. terminated its contract with Williams in 1976. Prior to the termination Canon U.S.A. formed a wholly-owned subsidiary, Astro Office Products. Canon U.S.A. allegedly sold calculators to Astro at lower prices than it charged Williams, thereby further undermining plaintiff's dealership by making it impossible for him to compete effectively. Williams subsequently filed this lawsuit under the federal antitrust laws.[3] In addition, he alleged breach of contract and unfair competition under California state law.[4]

Plaintiff's contract was made with Canon U.S.A. He had no direct contact with Canon, Inc. throughout the period of 1969 to 1976, except that in 1970 the parent company sent Williams some retail promotional literature at the request of Canon U.S.A. He had exhausted his supply of literature and wished to be restocked immediately, but Canon U.S.A. was temporarily out of stock.

There are interlocking directorates between Canon and its American subsidiaries. Takeshi Mitarai is chairman of the board of Canon, chairman of the board of Canon U.S.A. and a director of CBM. Seiichi Takikawa is a director of Canon, a director and president of both Canon U.S.A. and CBM and a director and chairman of the board of Astro. Takikawa was selected as president of the two American subsidiaries at a Canon board meeting. However, Williams does not allege that Canon disregarded the cor-

1. There are four related defendants in this case. Defendant Canon, Inc. owns 100% of the stock in defendants Canon U.S.A., Inc. and Canon Business Machines, Inc. Canon U.S.A., Inc. owns 100% of the stock in defendant Astro Office Products, Inc. Hereinafter, the parties will be identified as Canon, Canon U.S.A., CBM and Astro.

2. Clayton Act § 12 (15 U.S.C. § 22) reads, "Any suit, action, or proceedings under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business . . . ."

3. Clayton and Sherman Antitrust Acts, 15 U.S.C. § 1, et seq.

4. Cal.Bus. & Prof.Code § 16600, et seq., § 17000, et seq., and § 17040, et seq.

porate separateness by failing to have Takikawa elected as president by the individual boards of the subsidiaries.

Plaintiff's argument that Canon directly transacts business within the Central District of California emphasizes the following facts:

1. Canon owns 23 trademarks which are registered in the United States and used in each of the fifty states by its licensee, Canon U.S.A.

2. Canon has technical assistance and licensing agreements with two U.S. corporations. (Each contract provides that it shall be interpreted in accordance with the laws of Japan and that any dispute shall be resolved through arbitration in Japan.)

3. Production of a particular Canon lens was the result of a joint venture between Canon and the Association of Motion Picture and Television Producers, Inc. of the United States.

4. Canon securities, in the form of American Depositary Receipts (ADRs), are sold throughout the United States, including the Central District of California.

5. Mitarai and Takikawa participated in two business meetings for Canon Products in the Los Angeles area in or about 1972 and 1973. Mitarai commented at one of these meetings that the opening of the Costa Mesa office of CBM was the fulfillment of a life-long dream for him.

6. Personnel transferred from Canon's factory in Japan periodically conduct service training schools for employees of the subsidiaries. The classes are held in various places throughout the United States, including Los Angeles.

7. Williams also alleges that basic decisions concerning the pricing structure for Canon calculators and the opening of U.S. branch offices "emanate from Japan."

Plaintiff contends that there are four grounds upon which it would be proper for this court to exercise jurisdiction and which establish venue in the Central District of California. First, Williams alleges that the Japanese parent controls and manages its American subsidiaries such that it falls outside the protection of the *Toshiba* case. Second, he asserts that the parent company itself transacts business in the Central District within the meaning of the antitrust venue statute and such that this court has personal jurisdiction over it. Third, Williams argues that Canon is present in this district "by virtue of the presence of its named co-conspirators herein." Fourth, he claims that the issues of jurisdiction and venue were waived by Canon's previous general appearance (by stipulation for a continuance).

I

■ The plaintiff has failed to present evidence sufficient to meet his burden of establishing jurisdiction and venue as to Canon. The parent company does not control and manage the subsidiaries to the extent that the parent can be said to be transacting business in the Central District of California.

■ Use of a wholly-owned subsidiary to conduct business in a foreign jurisdiction does not necessarily subject the parent corporation to suit in the district in which the subsidiary transacts business. This is true even where the separation is merely formal, as long as the separation is real. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336–337, 45 S.Ct. 250, 69 L.Ed. 634 (1925). Transacting business within a district means conducting business there "in the ordinary and usual sense . . . of any substantial character." *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927); see *United States v. Scophony Corp.*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

Applying the foregoing rules in a private antitrust action, the Fifth Circuit stated,

"While it is true that venue may be established through a relationship between corporations when they in effect comprise a single entity, *Fisher Baking Co. v. Continental Baking Corp.*, 238 F.Supp. 322 (D.Utah, 1965), the evidence in this case does not demonstrate such a total disre-

gard for the separate corporate entities. Rather it appears that, while AT & T may dictate general policies of the operating companies, the daily business affairs are the responsibility of the different companies." *San Antonio Telephone Co., Inc., v. American Telephone & Telegraph Co.*, 499 F.2d 349, 352 (5th Cir. 1974).

The *Cudahy* case concerned jurisdiction, not venue, whereas *Eastman Kodak, Scophony, San Antonio Telephone* and *Toshiba* all involved interpretation of the Clayton Act. However, *Toshiba* specifically applies the rationale of *Cudahy* to questions of venue in antitrust actions.

The *Toshiba* decision did not resolve the issue of whether the venue limitation in § 12 of the Clayton Act is complemented by or is superseded by the general venue statute, 28 U.S.C. § 1391(d).[5] The court found that the Japanese parent corporation could not be sued anywhere in the United States without exceeding the boundaries of due process. Therefore, *Toshiba* defined the limits of both personal jurisdiction and antitrust venue applicable to this case.

■ Jurisdiction and venue are dependent upon more than mere control of the subsidiary by the parent corporation. Control necessarily comes with ownership. *Toshiba* requires that the plaintiff demonstrate that the parent both controls and *manages* the subsidiary. The parent controls the subsidiary when it dictates general policies, but it manages the subsidiary when it controls the internal affairs of the subsidiary and determines how the company will be operated on a day-to-day basis. *San Antonio Telephone, supra* at 352; *In re Chicken Antitrust Litigation*, 407 F.Supp. 1285, 1293 (N.D.Ga.1975); *Crow Tribe of Indians v. Mohasco Industries, Inc.*, 406 F.Supp. 738, 741 (D.Mont.1975).

Williams submits that the creation of separate corporate entities for Canon and its subsidiaries "is little more than a gimmick utilized by these defendants solely to avoid jurisdiction of the United States courts over the parent corporation, and to nonetheless allow the profits directly realized from the sale of Canon electronic calculators in this jurisdiction to flow back to the country of origin."[6] Plaintiff has produced no evidence to support this claim. Calling something a "gimmick" does not make it illegal or improper, nor does it shift the burden of proof as to the elements for jurisdiction and venue. Williams has alleged no set of facts sufficient to warrant this court's piercing of the corporate veil.

## II

■ There is insufficient evidence to establish the presence of Canon in the Central District at any time since 1969. The use of a trademark by a corporation's subsidiary is not a transaction of business by the parent company. See *San Antonio Telephone, supra*, wherein the court stated in a footnote that national advertising which happens to appear in a particular jurisdiction does not constitute transacting of business in that jurisdiction. The same rationale would apply, *a fortiori*, to the use of a trademark, a most passive form of advertising. That Canon's trademark is a property right and that Canon could enforce that right in this forum does not establish that Canon has purposefully availed itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. See *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

That Canon made technical assistance and licensing agreements with U.S. compa-

---

5. See *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), a patent case, in which the Supreme Court held that the general venue statute which subjects aliens to suit in any district where they can be served with process [28 U.S.C. § 1391(d)] expressed the intent of Congress to exclude aliens from the protection that the limited venue laws grant to

other litigants. *Brunette* involved the patent venue statute [28 U.S.C. § 1400(b)], which is almost identical to the antitrust venue statute [15 U.S.C. § 22].

6. Plaintiff's Points and Authorities Opposing Motion of Canon, Inc. to Dismiss, at 14.

nies and entered a joint venture with a U.S. concern is immaterial. See *Kresge Co. v. Kamei-Autokomfort*, 363 F.Supp. 257 (D.Minn.1973). Furthermore, there is *no* allegation that any of these contracts were made in this district or were to be performed here. In fact, the technical assistance and licensing agreements specify that Japanese law is to control and that any disputes arising thereunder are to be resolved through arbitration in Japan.

The sale of American Depositary Receipts is not a transaction of business by Canon. The sale of such securities is incidental to Canon's business and is conducted by its agent in New York. These facts do not provide a basis for jurisdiction over Canon in the Central District. Cf. *Gilson v. Pittsburgh Forgings Co.*, 284 F.Supp. 569 (S.D.N.Y.1968), in which venue was found to be improper in that the defendant's activities within the district did not constitute a substantial part of its ordinary business.

The visits in the district by Mitarai and Takikawa to business meetings for Canon products are immaterial. Both men are directors of the American subsidiaries. There is no suggestion that they represented the parent company at those meetings.

It also is immaterial that Williams received a shipment of promotional material directly from the Japanese company. That Canon sent the material upon the instructions of Canon U.S.A. does not indicate a lack of separateness of parent and subsidiary, nor does it constitute a transaction of business by Canon in the Central District.

That personnel from Canon's factory in Japan periodically conduct service training schools for employees of the subsidiaries in Los Angeles and elsewhere does not necessarily constitute a transaction of business by Canon in the Central District. If Canon U.S.A. requested that instructors from the Japanese factory be sent to train the American subsidiary's service personnel, if the instructors' salaries are paid by Canon U.S.A. throughout the time they conduct those classes in the Central District, and if their transportation to the United States is paid by Canon U.S.A., the conducting of such service training schools is entirely an activity of the subsidiary and does not afford a basis for jurisdiction over Canon. Williams has conducted discovery on the issue of jurisdiction. Yet he has alleged nothing more than that instructors from the Japanese factory periodically conduct service training schools in the United States, including Los Angeles. Such an allegation fails to meet the plaintiff's burden of establishing personal jurisdiction over Canon.

■ That basic decisions concerning the pricing structure for Canon calculators and the opening of U.S. branch offices "emanate from Japan," as the plaintiff alleges, should not be surprising. Williams points out that Takikawa, the president of the two U.S. subsidiaries, lives in Japan. With the president (and presumably, Mitarai, the chairman of the board) of Canon U.S.A. and CBM living in Japan, it would not be unusual to find that basic policy decisions are made in Japan. Furthermore, the making of such basic policy decisions is irrelevant to the issues of jurisdiction and venue. *San Antonio Telephone, supra*, at 352.

■ Plaintiff Williams attempts to aggregate all the above facts to establish that Canon has the requisite "minimum contacts" with the Central District of California to satisfy the standard for personal jurisdiction announced by the Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The famous *International Shoe* catchwords "minimum contacts" mean nothing analytically. The essence of the court's test for minimum jurisdictional requirements was,

> "Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at 319, 66 S.Ct. at 160.

In other words, personal jurisdiction is a matter of due process of law; *International Shoe* set a "fairness" standard by which to

approach the issue of personal jurisdiction rather than a specific rule based on the virtually meaningless phrase "minimum contacts." International Shoe Co. salesmen conducted business systematically and continuously in the State of Washington, thereby subjecting the company to personal jurisdiction in that state. Canon does not have salesmen or other agents in the Central District, nor does it systematically and continuously conduct business in the Central District. Applying the standard announced in *International Shoe*, this court finds that it has no jurisdiction over Canon.

### III

 Williams relies on an old decision in this circuit to the effect that the continued acts of conspirators in California to secure a monopoly constitute transacting business there. *Giusti v. Pyrotechnic Industries, Inc.*, 156 F.2d 351, 353 (9th Cir. 1946). Citing *Giusti*, Wright, Miller and Cooper, in 15 Federal Practice & Procedure 115, point out that, although a few cases accepted the conspiratorial theory of venue in antitrust cases, the theory was permanently laid to rest in *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953). It now is clear that in antitrust cases, as in litigation in general, venue must be established as to each defendant. Venue cannot be established as to Canon merely by alleging that Canon participated in a conspiracy with the other defendants to violate the antitrust laws.

### IV

Plaintiff is mistaken in believing that Canon needed to reserve its right to challenge jurisdiction and venue when it stipulated to a continuance last summer. The Federal Rules of Civil Procedure abandoned the former distinction between special and general appearances for the purpose of challenging jurisdiction or venue. A party may file a general appearance and object to personal jurisdiction or venue at any time before an answer is filed or may make such objection along with the answer. Rule 12(b), F.R.C.P.; *Hays v. United Fireworks Mfg. Co.*, 420 F.2d 836 (9th Cir. 1969).

This court finds that it does not have jurisdiction over Canon. Even if there were a basis for personal jurisdiction, Canon does not transact business, nor is it found, in the Central District of California. Therefore, venue in this district as to Canon is improper under § 12 of the Clayton Act (15 U.S.C. § 22). In the absence of both personal jurisdiction and proper venue, this court hereby dismisses the complaint as to defendant Canon, Inc.