**VAULT CORPORATION,**
**Plaintiff-Appellant,**

v.

**QUAID SOFTWARE LIMITED,**
**Defendant-Appellee.**

**No. 85–3652.**

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1985.

Chaffe, McCall, Phillips, Toler & Sarpy, Eleanor A. Lasky, Jarrell E. Godfrey, Jr., James A. Babst, New Orleans, La., for plaintiff-appellant.

Baldwin & Haspel, William E. Wright, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, WILLIAMS and HIGGINBOTHAM Circuit Judges.

BY THE COURT:

The district court dismissed plaintiff's action for injunctive and other relief. The basis for this ruling was a lack of personal jurisdiction based on ineffective service of process under Louisiana's "long arm" statute.[1] Plaintiff moved this court for injunctive relief pending appeal. In the interest of justice under the circumstances, 28 U.S.C.A. § 2106, we pretermit any ruling on the motion but vacate the order of dismissal entered by the district court and remand for further proceedings in that court.

## I

The relevant facts, as recited in the district court's opinion, are as follows:

Vault Corporation, the plaintiff, is the manufacturer of certain data security software designed to prevent the copying of software programs. This software is sold under the registered trademark PROLOK. Vault sells blank protected diskettes to purchasers who may then place software programs on the diskettes. Once this is accomplished, the software programs cannot ordinarily be copied in a form which will run on a computer.

Each PROLOK diskette sold to the public contains a statement which Vault refers to as a license agreement. Vault registered two versions of its copyright on PROLOK with the Registrar of Copyrights and received two certificates of registration, both dated August 8, 1985.

Like Vault, Quaid Software Corporation, the defendant, also manufactures computer software. Quaid's product, CopyWrite, is capable of "unlocking" the PROLOK software allowing any program which has been placed on PROLOK to be copied.

Vault claims that in order to develop CopyWrite, Quaid obtained copies of the PROLOK software diskettes and decompiled and disassembled them. Vault seeks relief under four theories: 1) Louisiana Software License Enforcement Act, R.S. 51:1961–1966; 2) Uniform Trade Secrets Act, R.S. 51:1431–1439; 3) federal copyright law, Title 17, United States Code; and 4) Louisiana Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401–1418.

\*     \*     \*     \*     \*     \*

Quaid claims that it has had only incidental contact with the State of Louisiana and so should not have to defend a suit here. Vault, on the other hand, maintains that Quaid has had sufficient contacts with the state and should be amenable to suit here.

\*     \*     \*     \*     \*     \*

The contacts that Quaid has had with Louisiana are as follows:

1) Quaid has mailed 510 orders of CopyWrite to customers within Louisiana. The product costs $50.00 each, and the total sales in Louisiana amount to $2,968.00. In relation to Quaid's overall sales of approximately $1,000,000, Louisiana sales constitute .3% of Quaid's revenue from the sale of CopyWrite.

2) Quaid advertises in approximately seven computer magazines, but Quaid does not special advertising in Louisiana publications.

Vault, the plaintiff, is a California corporation and Quaid, the defendant, is a Canadian corporation. Neither corporation is registered to do business in Louisiana. Quaid has no employees, agents, or representatives within the State of Louisiana, nor does it have any manufacturing sites or business offices here. There is no reason to believe that any witnesses to the dispute reside anywhere near Louisiana.

## II

A court's assertion of personal jurisdiction will meet due process requirements if the nonresident defendant has certain

---

**1.** LSA–RS 13:3201.

"minimum contacts" with the forum state and the maintenance of the suit comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 320, 66 S.Ct. 154, 158, 160, 90 L.Ed. 95 (1945)); *Bean Dredging Corp. v. Dredge Tech. Corp.,* 744 F.2d 1081, 1083 (5th Cir.1984).

The district court found that personal jurisdiction over Quaid did not exist for two reasons. First, the court determined that Quaid did not have "minimum contacts" with Louisiana. The court noted that Quaid had made only a small percentage of its sales in Louisiana, had not created any continuing obligations between itself and Louisiana residents, and had not specially targeted Louisiana in its advertising.

Second, the court determined that the assertion of jurisdiction would not comport with fair play and substantial justice. The court pointed to the burden on the defendant of litigating in Louisiana. Most importantly, however, the court decided that Louisiana had a minimal interest in adjudicating this dispute.

■ The number of contacts with the forum state is not determinative of the "minimum contacts" test; rather, the issue is whether the "defendant purposefully availed himself of the benefits of the forum state ... and ... even activities outside one state can fulfill this requirement if they have reasonably foreseeable consequences within the state." *Bean Dredging, supra,* 744 F.2d at 1083 (quoting *Quasha v. Shale Development Corp.,* 667 F.2d 483, 488 (5th Cir.1982)). In *Bean Dredging* we held that a manufacturer which introduced thousands of steel castings into the stream of commerce in an attempt to reach as broad a market as possible and which made no effort to limit the states in which they would be sold, had "minimum contacts" with Louisiana when two of these castings were used in construction of an allegedly defective dredge in that state. *Bean Dredging, supra,* 744 F.2d at 1085. *See also World-Wide Volkswagen Corp. v.*

*Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) ("[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State").

■ In this case Quaid sought to serve a national market, as shown by its advertising in seven national magazines. It made no attempt to limit the states in which its product was marketed. Its Louisiana sales of 510 orders of CopyWrite, while not a large percentage of its sales, were sufficient to indicate that its relationship to Louisiana was not "random," "fortuitous" or "attenuated." *Burger King, supra,* —— U.S. at ——, 105 S.Ct. at 2186. These sales clearly distinguish this case from *Growden v. Ed Bowlin & Associates,* 733 F.2d 1149 (5th Cir.1984), relied on by Quaid, where the defendant had never before sold to a resident of Louisiana. Here Quaid's attempt to reach as broad a market as possible, including Louisiana, together with the execution of 510 sales orders in this state, provides the necessary "minimum contacts" to support the exercise of personal jurisdiction.

In determining that the exercise of personal jurisdiction in this case would be unfair, the district court relied on Louisiana's "minimal interest" in adjudicating this dispute. However, in *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984), the Supreme Court determined that New Hampshire had a significant interest in redressing injuries from the local sales of an allegedly libelous national magazine. Similarly, in this case Vault alleges that each sale of the CopyWrite program is a tortious act. Therefore, Louisiana has a significant interest in redressing any injuries caused by the sale of CopyWrite in Louisiana. Under these circumstances, where it does not appear that Quaid will be unusually burdened by the exercise of jurisdiction in Louisiana, the as-

sertion of personal jurisdiction comports with fair play and substantial justice.

### III

The district court erred in determining that the exercise of personal jurisdiction in this case would not meet the requirements of due process.[2] We reverse and remand to the district court so that it may reach the merits of Vault's action for permanent injunction and damages. We, of course, express no opinion as to whether the merits of this case warrant the exercise of the court's discretion to grant all or any part of the injunctive or other relief requested. Based on the assumption that the district court will promptly act on the request for injunctive relief and in light of the action we take here, we decline to reach or rule on plaintiff's motion for an injunction pending appeal.

---

**2.** We do not reach the question of any limitations which the Louisiana "long-arm" statute, LSA–RS 13:3201, may place on the district court's exercise of personal jurisdiction with respect to Vault's claims which do not "arise from" its sales in Louisiana. We hold only that due process does not prohibit the exercise of personal jurisdiction here.