INDIANA PLUMBING SUPPLY, INC., Plaintiff,

v.

STANDARD OF LYNN, INC., a Massachusetts corporation; James Berk, an individual, Defendants.

No. CV 94–5311–SVW(SHx).

United States District Court, C.D. California.

March 8, 1995.

Ronald M. St. Marie, Ervin, Cohen & Jessup, Beverly Hills, CA, for plaintiff.

Susan Lerner, Morton G. Rosen, Haight, Brown & Bonesteel, Santa Monica, CA, for defendants.

## ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

WILSON, District Judge.

Defendant Standard of Lynn, Inc. ("Standard"), is a Massachusetts corporation with its principal and sole place of business located in Lynn, Massachusetts. Standard does not own any property in the State of California, and has no offices, employees, agents or bank accounts in the State of California. Plaintiff Indiana Plumbing Supply, Inc. ("Indiana") is a California corporation. Plaintiff claims that it has proprietary rights to the phrase "The Source" and alleges common law trademark infringement pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and also alleges California statutory and common law unfair competition claims against Standard. Standard now moves to dismiss the action under Rule 12(b)(2) for lack of personal jurisdiction. For the reasons stated herein, the Court hereby GRANTS defendant's Motion to Dismiss in part and DENIES the Motion in part.

*Background.*

In April 1994, defendant started an advertising campaign featuring the phrase "The Source" in *The Supply House Times, The Wholesaler, P & M* and *National Kitchen and Bath Business,* all of which are nationally distributed trade publications. Approximately 10% of the paid circulation of all four of these magazines is in California. Defendant also has advertised two toll-free, nationwide telephone numbers and at least one facsimile number for customers and prospective customers to place orders with the defendant in all states including California. Defendant's phone records indicate that it has received toll-free calls from 101 persons in California since April 1, 1994, when the challenged advertising first ran. Defendant admits that two sales were made to customers in California after April 1, 1994 for a total of $376.76. Standard has sales of $1,744.19 to five California customers in the last 24 months.

*Analysis.*

*Personal Jurisdiction Issues.*

Plaintiff, as the party seeking to invoke the jurisdiction of the federal court, bears the burden of establishing that jurisdiction exists in that court. *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984). Two independent considerations determine whether a federal court can exercise jurisdiction over a nonresident defendant: "whether an applicable state rule or statute potentially confers personal jurisdiction over the defendant, and whether the assertion of such jurisdiction accords with constitutional principles of due process." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1286 (9th Cir. 1977).

For a court sitting in California, the first consideration is satisfied by California Code of Civil Procedure § 410.10, which sets

the statutory limits of California's jurisdiction over nonresidents with the outer limits of constitutional due process. *Id.* at 1286. The key consideration as to the second prong is whether a nonresident defendant has had "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ There are two recognized bases for personal jurisdiction over nonresident defendants: (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the person in all matters, and (2) "specific jurisdiction" which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Since Indiana concedes that it does not have enough evidence to argue that general jurisdiction can be properly exercised over defendant, the Court only need determine whether plaintiff has sufficiently established that the Court may exercise specific jurisdiction over defendants.

■ Whether limited jurisdiction will lie "turns on the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc,* 557 F.2d at 1287. The Ninth Circuit has articulated a three step approach to evaluate an out-of-state defendant's contacts with the forum for the purposes of establishing limited jurisdiction:

(1) the nonresident defendant must perform some act by which he purposefully avails himself of the benefits and protections of the forum's laws; (2) the plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

*Raffaele v. Compagnie Generale Maritime, S.A.,* 707 F.2d 395, 397 (9th Cir.1983).

As the Ninth Circuit explained in *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988):

Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

The Court concludes that defendant's California actions, albeit limited, meet this purposeful availment standard. What separates this case from most others analyzing jurisdictional issues is that plaintiff's jurisdictional argument and underlying trademark claim are primarily supported by the same acts—namely, defendant's national advertising. Numerous cases have held that national advertising alone is not enough to establish a defendant's "purposeful availment" of a forum. *See, e.g., Williams v. Canon, Inc.,* 432 F.Supp. 376 (C.D.Cal.1977). In *Williams,* the Court refused to find personal jurisdiction over an out-of-state defendant based solely on the fact that the defendant advertised in national publications that were disseminated in California: "National advertising which happens to appear in a particular jurisdiction does not constitute transacting of business in that jurisdiction. The same rationale would apply, a fortiori, to the use of a trademark, the most passive form of advertising." *Id.* at 380. However, the advertisements discussed in *Williams* were not related to the tortious acts giving rise to the claim asserted in that case. *See also Ameritec Corp. v. Ameritech Corp.,* 230 U.S.P.Q. 225, 1986 WL 10702 (C.D.Cal.1986) (relying on *Williams* in rejecting argument that distribution of the defendants' advertisements in national publications that contained an alleged trademark infringement constituted purposeful availment of California residents for purposes of personal jurisdiction).

On the other hand, other courts that have opted to exercise personal jurisdiction over non-forum residents have emphasized national advertising as a relevant consideration. For example, in *Mitchell Daroff Enterprises, Inc. v. Danik, Inc.,* 209 U.S.P.Q. 531, 1979 WL 24989 (E.D.Pa.1979), the Pennsylvania

plaintiff in a Lanham Act trademark infringement case asserted personal jurisdiction over a Washington, D.C. defendant merely on the basis of the distribution of defendant's advertisement in a national newspaper in Philadelphia. The court sided with plaintiff, finding:

> [I]t is apparent that [defendant] may have committed a ... violation of the Lanham Act, and that any damage flowing from the violation inured to [plaintiff] because of the distribution of defendant's ad in Philadelphia. In view of the 'quality and nature' of the activity alleged to have constituted the Lanham Act violation (the wrongful use of the plaintiff's service mark and picture in defendant's advertising), the Court concludes that distribution of defendant's ad in Philadelphia is a sufficient minimum contact with Pennsylvania upon which to base long-arm jurisdiction.

*Id.* at 533.

Likewise, in *Vault Corp. v. Quaid Software Ltd.*, 775 F.2d 638 (5th Cir.1985), the court stressed the California defendant's attempt to serve a national market through advertising in seven national magazines in finding that the assertion of personal jurisdiction over defendant in Louisiana was proper. The court noted that defendant "made no attempt to limit the states in which its product was marketed" and that this advertising led to some sales in plaintiff's home state of Louisiana. According to the court, defendant's "attempt to reach as broad a market as possible, including Louisiana, together with the execution of sales orders in this state, provide[d] the necessary 'minimum contacts' to support the exercise of personal jurisdiction." *Id.* at 640; *see also Core–Vent Corp. v. Nobel Industries A.B.*, 11 F.3d 1482, 1487 (9th Cir.1993) (suggesting in dicta that

distribution of defamatory articles in medical journals world-wide, including forum state, would be sufficient contact for the purposeful availment prong).

If Indiana had only alleged the national advertisements as the justification for jurisdiction, the Court would have declined to hear this matter. However, plaintiff has alleged more than the advertisements. For example, defendant maintains a nationwide toll-free number for its customers in all states (which did result in over 100 calls from California residents after the advertisements were issued). *See Wilden Pump & Engineering Co. v. Versa–Matic Tool Inc.*, 20 U.S.P.Q.2d 1788, 1991 WL 280844 (C.D.Cal.1991) (this Court rejecting defendant's challenge to personal jurisdiction in California, finding that defendant had solicited business in California by "purchasing a trade-show booth, advertising in nationwide trade journals, and *maintaining a nationwide toll-free number for its customers*"). *Id.* at 1789 (emphasis added).

■ Defendant has also made two California sales since the challenged advertisements began running in April 1994.[1] Plaintiff also submitted a declaration from a California resident who read defendant's advertisements in one of the magazines distributed in California and claims to have been confused by the defendant's use of the phrase "the Source"—she initially believed both were advertisements for the plaintiff. In short, the Court concludes that the advertisements, the toll free phone system, and the one documented case of confusion sufficiently converge to satisfy the standard articulated in *Sinatra:* i.e., affirmative conduct by defendant which allows or promotes the transaction of business within the forum state.[2]

---

1. The Court acknowledges that the defendant's affidavits from the two people who made these purchases state that they placed orders with defendant because of referrals made by the manufacturers of the products they were seeking, and that both were unaware of Standard's advertising when they made their purchases. Yet, plaintiffs are alleging trademark infringement, which requires proof of secondary meaning and a likelihood of confusion as to the origin of competing goods and services, factors that are not necessarily tied to actual sales.

2. Defendant also claims that it merely placed its advertisements into the "stream of commerce," and therefore, there was no act purposefully directed into California. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). The Court is not persuaded by this argument. Given the large California distribution of the magazines in which the advertisements appeared, the defendant could reasonably anticipate that it would receive some interest from California customers. In fact, Standard received

■ As for the second component in the *Data Disc* analysis, there is no reasonable dispute that this case arises out of the defendant's California-related activities. As for the third prong, once it has been determined that defendants have purposely availed themselves of the protection of California, the exercise of personal jurisdiction is presumed to be reasonable. "In order to rebut that presumption, the defendants must present a compelling case that jurisdiction would, in fact, be unreasonable." *Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir.1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985)).

■ The Ninth Circuit has developed a seven factor test to determine the reasonableness of the exercise of personal jurisdiction: (1) the extent of the defendant's purposeful interjection into the state forum; (2) the burden on the defendant of defending in the chosen forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Industries A.B.*, 11 F.3d 1482, 1487 (9th Cir.1993). None of these factors is dispositive in itself; they must all be balanced against the others. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir.1991). The Court presently analyzes these factors.

■ (a) Purposeful Interjection. This factor is essentially co-extensive with the purposeful availment prong of the due process analysis. Where there are only attenuated contacts with a forum, the "slightness of the purposeful interjection 'militates against' a finding of the reasonableness of jurisdiction." *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir.1981). For example, In *Core-Vent*, plaintiff was headquartered in California and manufactured dental implants distributed throughout the world. The plaintiff alleged that defendants, doctors residing in Sweden,

published defamatory articles about plaintiff's products. The articles were published in medical journals that were distributed world-wide, including California. The Ninth Circuit concluded that this single contact— i.e., the dissemination of the article in journals distributed to California—was "attenuated" for the purposes of the purposeful interjection factor and therefore weighed this factor in defendants' favor. *Core-Vent*, 11 F.3d at 1488. However, the court also suggested that this single contact was probably sufficient to meet the purposeful availment prong, so the Court concluded that the purposeful interjection factor did not weigh heavily in defendant's favor. *Id.*

Again, the Court notes the close nature of this determination here. However, since plaintiff has shown purposeful availment through the convergence of the various factors discussed *supra*, the Court concludes that this prong slightly favors plaintiff, or, at a minimum, is neutral to both parties.

■ (b) Burden on Defendant. This factor examines how difficult it will be for a defendant to travel to the forum state to defend itself. Defendant notes that it is a family run business, "without extensive layers of management." Requiring it to defend here, defendant argues, would result in the absence of their President, Mr. Berk, for "weeks at a time," and hamper fact gathering and case strategy given the distance between the client and trial counsel.

The Court is not persuaded by these arguments. Of course, in almost any case where the defendant does not reside in the forum state, some additional inconvenience is inevitable. However, the Ninth Circuit has recognized that "modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum." *Marina Salina Cruz*, 649 F.2d at 1271. Defendant's mention of "weeks" required away from its home state, the Court assumes, is a reference to the trial. Given the present scope of the case, the Court assures both parties that it does not anticipate any lengthy trial. Defendant has also

over 100 calls from California residents after the advertisements appeared. Furthermore, defen-

dant's other actions discussed *supra* show more than mere placement in the steam of commerce.

stated that this case is amenable to resolution by summary judgment, so trial may not be required. Mr. Berk has visited California a few times in the past fifteen years on vacation and to attend computer seminars. Therefore, it is apparent that Standard has someone to "mind the store" during his absences.

Defendant also asserts that conducting the trial in California will deprive it of the ability to introduce the live testimony of several key witnesses, including the advertising agency executive who created the promotional campaign using the phrase "The Source." This witness has submitted a declaration stating that it would be impossible for him to attend the trial in California; however, if the trial were in Boston, he would be able to testify. Defendant also has a number of percipient witnesses with testimony relevant to its defense who, it is alleged, will not testify at trial if it is conducted in California. Yet, the burden of establishing the elements at issue in this case rests with plaintiff, not defendant. Furthermore, given the nature of this case, the Court does not believe that the persuasive value of the testimony of defendant's witnesses will suffer if presented by other means such as video deposition.

Overall, the Court concludes that the type of burden which the courts have found to be determinative is different in kind than that alleged by defendant here. Courts have been particularly sensitive to the burden on a foreign national in defending itself in the United States. *See Asahi Metal Indus., Ltd. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness" of exercising jurisdiction.). Other courts have focused on the physical barriers confronting defendants. In *Marina Salina Cruz,* 649 F.2d at 1271–72, the Court found significant that there was no direct transportation between the Mexican harbor where defendant was headquartered and Alaska were the case was pending. The court also pointed to the sheer distance between southern Mexico and Alaska and the difficulties in transporting witnesses and evidence to Alaska. *See also Core–Vent,* 11 F.3d at 1488–89 (noting unique burden placed on Swedish defendants in defending themselves in United States); *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 851–52 (9th Cir.1993) (finding sufficient burden where defendant was foreign corporation based in the Philippines, with no connections with the forum state). Since none of the problems with extreme distance exist here, the Court concludes that this factor is, at best, neutral to both parties.

(c) Conflict with Sovereignty of Defendant's State. Both parties agree that this factor is irrelevant—there is no conflict between the laws of Massachusetts and California. Thus, this factor is neutral.

(d) Interest of Forum State. Without a doubt, California maintains an interest in providing an effective means of redress for its residents who are tortiously injured. *Sinatra,* 854 F.2d at 1200. This is particularly true in the case of trademark infringement which has as a principal purpose the protection of the public from confusion. Defendant argues that where the substantive basis of the claim is federal law, not state law, the forum state has a lesser interest in providing effective redress to its citizens. Defendant, without surprise, cites to no case in support of this curious assertion. In fact, case authority supports plaintiff. *See Wilden Pump,* 32 U.S.P.Q.2d at 1791 (finding that California had an interest in protecting its citizens from patent infringement under federal infringement laws). Accordingly, this factor favors plaintiff.

(e) Most Efficient Resolution. This factor involves a comparison of alternative forums. Where the witnesses and evidence are likely to be located is an important consideration for this factor. *Core–Vent,* 11 F.3d at 1489. On the issues of likelihood of confusion and secondary meaning, the principal focus will apparently be on the extensive use of the mark by plaintiff in California. According to plaintiff, most of their customers and business are in California, and therefore, most of their witnesses will come from California. Plaintiffs also state that most of the "crucial documents and other evidence" on the pertinent legal issues are in plaintiff's business

records which are exclusively located in California. As discussed, defendant claims that a majority of its own witnesses are located in the New England area. At best, the Court believes that this factor is either neutral or favors plaintiff, especially in light of the fact that plaintiff carries the burden of proof in this case.

(f) Convenient and Effective Relief for Plaintiff. It is uncontested that California is the more convenient and effective forum from plaintiff's perspective. However, courts have not given much weight to inconvenience to the plaintiff in the balancing of these factors—"a mere preference on the part of the plaintiff for its home forum does not affect the balancing." *Id.* at 1490. Thus, this factor is either neutral or favors plaintiff.

(g) Existence of an Alternative Forum. It is not disputed by either party that this action can be maintained in a Massachusetts federal court. This factor favors defendant.

As stated, defendant's burden is to "present a compelling case" that the exercise of jurisdiction is unreasonable. Given that the balance on most of these factors either favors plaintiff or is neutral to both parties, defendant has failed to meet its burden of establishing that jurisdiction in California would be unreasonable. In short, the Court opts to exercise personal jurisdiction over Standard.

*Jurisdiction Over Corporate Officer.*

Plaintiff is also asserting personal jurisdiction over James Berk, Standard's president. Plaintiff alleges that Mr. Berk is personally liable for his tortious actions in directing Standard to use the name "The Source" in infringing advertisements in magazines he knew were distributed in California and elsewhere. Defendant argues that in all regards to Berk's contacts with California, he was acting for Standard, and therefore should be shielded from jurisdiction in California. This is known as the "fiduciary shield" doctrine—i.e., a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 514 (9th Cir.1989). However, the Ninth Circuit recognizes that the

corporate form may be disregarded if there is reason to do so—i.e., if the corporation is the alter ego of the individual or the individual is personally liable for wrongdoing in the forum. *Id.* at 520–21. Likewise, the Supreme Court in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 787, 104 S.Ct. 1473, 1485–86, 79 L.Ed.2d 790 (1984), expressly rejected automatic jurisdictional immunity for corporate agents:

> [W]e reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.... Each defendant's contacts with the forum State must be assessed individually.

Thus, the plaintiff has the burden of establishing that the individual defendant personally directed the activities toward the forum state giving rise to the complaint. *Bumgarner v. Carlisle Medical, Inc.*, 809 F.Supp. 461, 463–64 (S.D.Miss.1993). As recognized by the Ninth Circuit, "Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity." *Davis*, 885 F.2d at 524 (citation omitted); *see also LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F.Supp. 820 (N.D.Cal.1992). In *LeDuc*, the court rejected a plaintiff's assertion that employees and directors of a Kentucky insurer purposefully availed themselves of the California forum by directing the activities of the insurer to California. The dispute centered on the purported failure of the Kentucky insurer to disclose allegedly fraudulent practices to its agents.

One of the defendants was a corporate director who signed various agency contracts with the plaintiff authorizing it to solicit business from California residents. The Court found that the defendant's act of signing the agency contracts, which admittedly assisted the insurer in developing further business in California, was "neither sufficiently directed at this state, nor ... adequately connected

with the issues of this litigation to warrant the exercise of jurisdiction in this action. *Id.* at 825. However, the Court did find that the activities of another individual defendant, the insurer's president, in writing a letter to policyholders in California assuring them of the insurer's financial stability was an act intentionally directed to the forum closely linked to the allegations of the litigation and sufficient to support personal jurisdiction in California over the president. *Id.*

Thus, the central determination is whether plaintiff has sufficiently established that Mr. Berk's individual contact with California justifies the Court's exercise of personal jurisdiction over him—i.e., whether he is a primary participant or "guiding spirit" in the alleged wrongdoing intentionally directed at California. Berk has only been in California a few times in the past fifteen years, and none of these visits were related to the underlying cause of action at issue here.

Plaintiff, however, also asserts that Berk is personally liable for directing his company to use "The Source" in advertisements. Berk admitted in his deposition that he was responsible for most of the administrative functions at Standard, including sole responsibility for the advertising. He also admitted that he authorized the advertisements with the contested mark to appear in national magazines which he knew were distributed in California. However, defendant has submitted evidence that Mr. Berk did not develop the advertising campaign using the phrase "The Source." Berk also testified that he did not choose to use the ad with the phrase "The Source" alone, but was one of a group of three who made the decision.

Plaintiff counters with the fact that it was Berk who responded to the cease and desist letter received from plaintiff regarding use of the mark "The Source." Berk also testified that he took no immediate steps to stop using the term after receiving the letter even though he understood that plaintiff contended that it infringed on its service mark.

Again, the Court is faced with a difficult decision as to whether the exercise of jurisdiction over Mr. Berk is proper. The Court concludes that plaintiff has failed to establish that such an exercise of jurisdiction is warranted in light of all the circumstances presently under consideration here. Plaintiff has not alleged sufficient personal conduct by Mr. Berk specifically directed at California that would justify hailing him into this Court. Furthermore, the Court is not satisfied that Mr. Berk was the sole "guiding force" behind the advertising campaign that has resulted in this lawsuit.

*Conclusion.*

For the foregoing reasons, the Court hereby DENIES defendant's Motion to Dismiss in part and GRANTS the Motion in part. Accordingly, this action is DISMISSED as to defendant Mr. Berk.

IT IS SO ORDERED.