Thomas LeDUC and Tom LeDuc
Agency, Plaintiffs,

v.

KENTUCKY CENTRAL LIFE
INSURANCE COMPANY,
et al., Defendants.

Steven TARNOFSKY and Steven
Tarnofsky Insurance Services,
Inc., Plaintiffs,

v.

KENTUCKY CENTRAL LIFE
INSURANCE COMPANY,
et al., Defendants.

Nos. C–92–1756 RFP, C–92–2110 RFP.

United States District Court,
N.D. California.

Aug. 31, 1992.

Jon L. Edwards, Franklin Brockway Gowdy, Martin L. Fineman, Brobeck, Phleger & Harrison, San Francisco, CA, for plaintiffs.

Robert F. Phillips, Jr., Richard A. Ergo, Bowles & Verna, Walnut Creek, CA, for defendants.

PECKHAM, District Judge.

## INTRODUCTION

These actions have been related before this court because they involve the same parties and substantially the same set of facts. The following motions to dismiss and strike by Kentucky Central Life Insurance Company ("Kentucky Central") and certain directors and officers of Kentucky Central ("Individual Defendants") are before the court: (1) Kentucky Central's motion to strike portions of the first amended complaint in the *LeDuc* action; (2) Kentucky Central's motion to strike portions of the complaint in the *Tarnofsky* action; (3) Individual Defendants motion to dismiss LeDuc first amended complaint for lack of personal jurisdiction; (4) Individual defendants motion to dismiss Tarnofsky complaint for lack of personal jurisdiction; (5) Kentucky Central's motion to dismiss certain claims in LeDuc first amended complaint under Rule 12(b)(6) and (6) Kentucky Central's motion to dismiss certain claims in Tarnofsky complaint under Rule 12(b)(6).

## BACKGROUND

Plaintiffs Thomas LeDuc, the Tom LeDuc Agency, Steven Tarnofsky and Steven Tarnofsky Insurance Services, Inc. were agents of Kentucky Central who solicited and sold life insurance policies for Kentucky Central. Plaintiffs Tarnofsky and LeDuc claim that during the latter part of the 1980's, Kentucky Central and certain of its officers and directors engaged in fraudulent investment practices which they concealed from their agents, LeDuc and Tarnofsky. They claim that Kentucky Central failed to disclose the financial instability of the company and the

improper lending practices in order to sell more life insurance and annuity investments at higher premiums.

In addition, Plaintiffs claim that Kentucky Central and its officers and directors perpetuated their scheme to defraud by attempting to silence Kentucky Central agents, competitors and others from disclosing the facts relating to the fraudulent lending practices and policies and deteriorating financial condition. This attempted silencing and fraudulent misrepresentation of the financial condition of the company was allegedly accomplished through various letters mailed to the agents and customers in which Kentucky Central downplayed its recent financial difficulties and suggested that certain of its agents were improperly casting doubts regarding the financial security of the insurance company.

LeDuc and Tarnofsky claim that they were forced to resign as representatives of Kentucky Central as a result of these improper activities by Kentucky Central and its directors and officers. LeDuc and Tarnofsky further claim that Kentucky Central owes them for outstanding commissions.

Plaintiffs' actions assert claims for RICO violations, libel, breach of contract, bad faith interference with prospective economic advantage, fraud, negligent misrepresentation, California Business and Professions Code violations, declaratory relief, and intentional infliction of emotional distress. In general the complaints asserts that: (1) Kentucky Central misrepresented its financial condition to induce the public to purchase its products and, in the process, damaged Plaintiffs; (2) Kentucky Central made libelous statements regarding Plaintiffs; and (3) Kentucky Central breached employment or business contracts with Plaintiffs. *The LeDuc* and *Tarnofsky* complaints are based upon the same general factual allegations and assert nearly identical claims. The *LeDuc* action asserts two claims which are not asserted in *Tarnofsky* but neither of those claims is at issue in these motions.

Kentucky Central claims that these two RICO actions are a defensive reaction to state court litigation which Kentucky Central initiated against former Kentucky Central agents, including Tarnofsky and LeDuc, for their alleged participation in a campaign of misrepresentation regarding the financial condition of Kentucky Central to induce Kentucky Central policyholders to replace their policies with policies from other insurance companies. Kentucky Central dismissed the state court action without prejudice and brought an action in this court asserting essentially the same claims as those pled in the previous state action in order to have all three actions before a single judge. This third action has been related to these suits.

Kentucky Central maintains that Plaintiffs LeDuc and Tarnofsky have used the fact of Kentucky Central's rating reduction and setbacks in .Kentucky Central's mortgage and real estate portfolio to make misleading and false allegations in their complaints about Kentucky Central's financial condition. Kentucky Central asserts that it has filed required financial statements with the SEC and many state insurance departments during the period in question. Kentucky Central claims that its real estate related loses have been fully disclosed to shareholders and agents and have been scrutinized by numerous regulatory authorities.

Kentucky Central acknowledges that it experienced some downgrades in its ratings by A.M. Best and Standard and Poors in 1991. Kentucky Central maintains, however, that it still has adequate funds to meet all of the obligations of its policyholders. Kentucky Central claims that plaintiffs LeDuc and Tarnofsky have seized upon the downgradings and have attempted to create panic among policyholders by causing them to believe that Kentucky Central would be "the next Executive Life". According to Kentucky Central, the activities of LeDuc and Tarnofsky have caused the replacement of hundreds of policies by insureds who obtained their Kentucky Central policies through plaintiffs and other agents.

## DISCUSSION

A. *Motions of Individual Defendants to Dismiss LeDuc and Tarnofsky Actions for Lack of Jurisdiction:*

1. Personal Jurisdiction and Minimum Contacts:

The Individual Defendants, who are officers, members of the board and employees of

Kentucky Central seek dismissal of the complaints against them for lack of personal jurisdiction. None of the Individual Defendants lives or works in California and they each claim that they do not have sufficient contacts with California to warrant the exercise of jurisdiction over them in this state.

■ Personal jurisdiction is determined by the applicable state personal jurisdiction statute and constitutional principles of due process. *Data Disc, Inc. v. Systems Tech. Assoc.*, 557 F.2d 1280, 1286 (9th Cir.1977). California's personal jurisdiction statute confers jurisdiction to the extent permitted by the due process clause. *See Cal. Code of Civil Procedure,* Section 410.10. The due process clause restricts the exercise of jurisdiction to those situations where a defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice". *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ Personal jurisdiction over a nonresident of the forum state can be either general or specific. *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990). General jurisdiction is applicable where a defendant's activities in the forum state are "substantial" or "continuous and systematic", even if the cause of action is unrelated to those activities. *Data Disc,* 557 F.2d at 1287. None of the Individual Defendants lives in California, works in California or owns real property in California, although a few of the Individual Defendants have made occasional business related trips to California. Several of the Individual Defendants have not even been in California in the last five years. Thus, none of the Individual Defendants is sufficiently connected to California to warrant the exercise of general jurisdiction in this case.

■ California courts may assert specific jurisdiction over non-resident defendants if their activities in the forum give rise to or are related to the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Such specific jurisdiction is established by the following three-part test: (1) the out of state defendant must have purposefully directed its activities toward residents of the forum state; (2) the cause of action must arise out of or result from the defendant's forum-related action; and (3) the forum's exercise of personal jurisdiction must be reasonable. *Sher,* 911 F.2d at 1361.

■ The mere fact that a corporation is subject to general jurisdiction does not mean that its non-resident officers and directors are subject to jurisdiction as well. *Davis v. Metro Productions,* 885 F.2d 515, 520 (9th Cir.1989). Each defendant's contacts with the forum state must be examined individually to determine whether that defendant has sufficient minimum contacts to support a finding of jurisdiction. *Id.* at 522.

In *Davis,* the Ninth Circuit determined that jurisdiction was appropriately exercised over officers and directors of a corporation where it was demonstrated that the individuals purposefully directed allegedly fraudulent activities toward the forum state. *Id.* Thus, the court asserted jurisdiction over two corporate directors who were the sole shareholders of a corporation in a RICO action alleging fraud and securities violations where it was shown that these individual directors purposefully availed themselves of the forum state by soliciting business from that state and meeting with a citizen of that state to discuss the opportunity for his clients, also citizens of the forum, to invest in the fraudulent venture. *Id.* at 522–23.

In reaching the decision to uphold the exercise of jurisdiction over these individual directors, the *Davis* court relied upon the United States Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) in which the Court affirmed the assertion of jurisdiction in California over a nonresident reporter and editor who had libeled the plaintiff in an article they had written and edited in Florida. The Court rejected the defendants' claim that they were not subject to jurisdiction in the forum because their only contact with California occurred in their capacity as employees of a corporation. The Court distinguished general untargeted negligence which might not provide a basis for jurisdiction over a nonresident employee from intention-

al, allegedly tortious actions by the defendants expressly aimed at the forum state which would provide a basis for the exercise of personal jurisdiction in spite of the individual's corporate affiliation. 465 U.S. at 789–90, 104 S.Ct. at 1487.

In the instant case, Plaintiffs claim that each of the Individual Defendants has purposefully availed himself of the California forum by directing the activities of Kentucky Central to California. With the exception of Defendant Burnett, however, Plaintiffs have failed to demonstrate that the activities either conducted in this state or directed at this state are sufficiently linked to this litigation to justify the exercise of jurisdiction over them in this case.

■ Plaintiffs' only claims regarding Defendants Hembree and Schaeffer are that they have each admitted to being present in California in the last five years for the purpose of testifying in a case to which Kentucky Central was not a party. The only evidence linking Defendant Preston to California is the fact that he made two visits to the state for trade association meetings. Defendant Gunn has been in California only three times in the last five years and none of his visits are linked to the allegations of fraudulent conduct by Kentucky Central. Although Defendant Rampulla admits to making occasional trips to California to conduct business, there is no evidence that his few trips to California were connected with the issues in this dispute. There is no basis for asserting specific jurisdiction over any of these defendants in their individual capacities.

■ Plaintiffs' claim for the exercise of personal jurisdiction over Defendant Surmick is based solely on his status as Regional Director for Kentucky Central's Western Region which includes California. Plaintiffs contend that this position would require that Defendant Surmick meet with agents who solicit business in California and therefore, should be sufficient to subject him to jurisdiction in this state in this action. This is an insufficient basis for the exercise of jurisdiction, however. There is no evidence of any purposeful action taken by this defendant either in or directed at California which is in

any way connected with the fraud alleged in this action. Plaintiffs seek to establish personal jurisdiction over this individual on nothing more than his corporate title. This asserted basis for jurisdiction stands in stark contrast to the intentionally tortious actions of the defendants which were directed at the forum state and its citizens in *Davis* and *Calder*.

■ Similarly, Plaintiffs seek to establish jurisdiction in California over Defendant Sammartin because he signed various agency contracts with Plaintiff LeDuc which authorized LeDuc to solicit business from California residents. In addition, Defendant Sammartin travelled to California twice a year to meet with agents in this state. Such connections are insufficient to establish personal jurisdiction over this defendant in this action. This dispute centers upon the failure of Kentucky Central to disclose allegedly fraudulent practices to its agents. Defendant Sammartin could not reasonably have known that by signing such contracts he would be subject to jurisdiction in this state in this case. Although his signing of the documents may have indirectly assisted Kentucky Central in developing further business in California, the act of signing the agency's contract is neither sufficiently directed at this state, nor is it adequately connected with the issues of this litigation to warrant the exercise of jurisdiction in this action.

■ Finally, Plaintiffs claim that jurisdiction is appropriately exercised over Defendant Burnett, the President and Chairman of the Board of Kentucky Central because he authored a letter to policyholders, including those in California, which assured them that "there is absolutely no reason for you to be concerned about your policy's safety or about Kentucky Central's stability". Because this suit alleges the fraudulent concealment of the financial downfall of Kentucky Central, the writing of such a letter of assurance to Kentucky Central policyholders is an act directed to the forum which is closely linked the allegations of this litigation. Through the writing of this letter, Plaintiffs contend, Defendant Burnett furthered the fraudulent scheme charged in the complaint. This court

considers this action to be analogous to the intentional and allegedly tortious conduct of the defendants in *Davis* and *Calder* and thus, under the teachings of those cases, jurisdiction must be exercised over this defendant in his individual capacity.

In sum, Plaintiffs have failed to establish that any of the Individuals Defendants, with the exception of Defendant Barnett, has sufficient contacts with California to warrant the exercise of jurisdiction over them in this case and consequently their motions for dismissal for lack of jurisdiction will be granted. Defendant Barnett will not, however, be dismissed since the letter which he wrote to policyholders in California is a sufficient basis for jurisdiction.

Plaintiffs have submitted interrogatory responses filed by the Individual Defendants pertaining to the contacts of each defendant with the forum state. The court has reviewed those responses and finds nothing in them to warrant the reconsideration of this ruling.

2. Personal Jurisdiction Under RICO:

■■■ Plaintiffs have also asserted that personal jurisdiction over the Individual Defendants for the RICO claim can be established under the "nationwide service of process" authorized under RICO. 18 U.S.C. § 1965(b). The nationwide service of process authorized by the RICO statute is conditional, however, and provides that such process is available if it is shown that "the ends of justice" require that persons outside the district be brought before the court. 18 U.S.C. § 1965(b); *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir.1986). In *Butcher's Union*, the court stated that:

As section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators ...

*Id.* at 539. Moreover, the court stated that merely naming persons in a RICO complaint does not subject those persons to the nationwide service provisions of Section 1965(b). *Id.*

■■■ Defendants have asserted that Kentucky is an appropriate forum in which a court could have personal jurisdiction over all of the alleged co-conspirators. Kentucky Central is incorporated in Kentucky and has its principal place of business there. All of the Kentucky Central officers and directors are residents of Kentucky. Defendant Surmick, who is neither an officer nor a director, is amenable to process in Kentucky. Thus, there is no indication in this case that justice requires the exercise of jurisdiction in California courts and therefore, this court will not invoke 18 U.S.C. § 1965(b) to provide for the service of process and jurisdiction over the Individual Defendants in California.

B. *Motions of Kentucky Central to Dismiss Certain Claims of Tarnofsky and LeDuc Complaints Under Rule 12(b)(6):*

Defendant Kentucky Central seeks dismissal of Plaintiffs' claims for RICO violation, fraud, negligent misrepresentation and libel under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1. RICO Claims Barred By McCarran–Ferguson Act:

15 U.S.C. § 1012(b) of the McCarran–Ferguson Act provides:

No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ...

■■■ The McCarran–Ferguson Act precludes application of federal statutes to the business of insurance where (1) the federal statute does not relate specifically the business of insurance; (2) the complained of activities constitute the business of insurance; (3) the state has enacted laws for the purpose of regulating the complained of activity; and (4) the application of the federal statute

would invalidate, impair or supersede state legislation. *Cochran v. Paco, Inc.,* 606 F.2d 460, 464 (5th Cir.1979). This court finds that each of these factors is satisfied in this case and thus, the RICO claim is preempted by the McCarran–Ferguson Act.

### a. *RICO Not Specifically Related to Business of Insurance:*

RICO is clearly not specifically related to the business of insurance.

### b. *Kentucky Central's Alleged Fraudulent Marketing Activities Constitute the Business of Insurance:*

Plaintiffs have alleged that Kentucky Central engaged in a pattern of making false and fraudulent representations to its agents, and to members of the general public in order to perpetrate a scheme that would allow Kentucky Central to distort its financial condition so that its agents would be induced to sell, and members of the general public would be induced to purchase, Kentucky Central insurance and annuity investments. Kentucky Central maintains that this activity is squarely within the "business of insurance" and therefore the second factor of the McCarran–Ferguson analysis is satisfied.

Plaintiffs argue that the McCarran–Ferguson Act is intended to have a narrow scope and should not be applied to claims outside the context of a claim of antitrust violation in the course of insurance rate making. In *Group Life & Health Ins. v. Royal Drug Co.,* 440 U.S. 205, 217–18, 99 S.Ct. 1067, 1076, 59 L.Ed.2d 261 (1979), the Supreme Court explained, however, that in adopting the McCarran–Ferguson Act, "[t]he primary concern of Congress ... was in enacting legislation that would ensure that the states would continue to have the ability to tax and regulate the business of insurance". The Court indicated that the applicability of antitrust laws to the industry was merely a "secondary concern". *Id.* Similarly in *Cochran v. Paco, Inc.,* 606 F.2d 460, 463 (5th Cir.1979), the Fifth Circuit stated:

[A]lthough the Act was passed primarily in response to [*United States v.*] *South-Eastern Underwriters* [*Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944)],

an antitrust case, there is no doubt that its scope is much broader than the antitrust area. For example, state tax laws relating to the business of insurance are expressly covered by 15 U.S.C. 1000 and 1012. In addition, these two sections speak of "regulation" of the insurance business, and that term is certainly not limited to antitrust regulation. Although debate naturally focused for the most part on the Act's antitrust implications, Congress was clearly concerned with the overall regulatory picture, including collection of premiums, general regulations, the issuing of licenses, and many other aspects of the business.

Plaintiffs' complaints assert that Kentucky Central made false and fraudulent representations to its agents and to members of the general public "in order to perpetrate a scheme that would allow Kentucky Central to distort its financial condition so that its agents would be induced to sell, and members of the general public would be induced to purchase Kentucky Central life insurance and annuity investments." Plaintiffs claim that they would not have continued to solicit applications for Kentucky Central policies if they had received true and accurate information regarding Kentucky Central's lending practices and financial condition. Plaintiffs further allege that Kentucky Central believed that agents would be induced to solicit applications for Kentucky Central policies only if they were given such false information. The allegedly fraudulent activity is, therefore, within the business of insurance because it is directed at the purchasing public and is intended to induce the purchase of insurance. The disclosure of information regarding the financial stability of an insurance company is certainly important to the decision to purchase insurance.

Plaintiffs attempt to construe their RICO claims to be directed to the allegedly fraudulent lending practices of Kentucky Central in order to avoid the obvious interpretation of the scheme as one within the "business of insurance". In the complaints, Plaintiffs assert that members of the board of Kentucky Central invested the assets of Kentucky Central unwisely and even fraudulently and that such activity led to the financial instability of

the company. Plaintiffs cannot, however, re-characterize their RICO claims as claims of improper lending practices because their RICO claims clearly charge a scheme of comprised of the defrauding agents and insurance purchasers through misrepresentations regarding the solvency of Kentucky Central. In addition, it is difficult to understand how these Plaintiffs would have standing to bring a claim for wrongful lending practices since they are not suing as borrowers, stockholders or investors damaged by such imprudent lending practices.

The determination of whether activities constitute the business of insurance is largely focused upon whether the matter involves the relationship between the insurance company and the policyholder. *Securities and Exchange Com'n v. National Securities,* 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969). In *National Securities* the Court stated:

> The relationship between the insurer and the insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance"... Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance".

*Id.*

In *National Securities,* the Court permitted the SEC to prosecute a complaint against two merging insurance companies where the merger was approved by the Arizona Director of Insurance. The Court held that statutes aimed at protecting the interests of those who owned stock in an insurance company did not come within the sweep of the McCarran–Ferguson Act because it did not regulate the interests of those purchasing insurance policies. *Id.* at 457, 460, 89 S.Ct. at 567, 568.

In contrast, the allegations in the Plaintiffs' complaints of alleged fraud by Kentucky Central in inducing the purchase of policies are directed to the relationship between Kentucky Central and its policyholders. The allegations also implicate the reliability of the policies since Plaintiffs claim that Kentucky Central misrepresented their solvency and ability to pay on the policies should the need arise.

In *Group Life & Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Court identified three factors to be considered when determining whether a particular practice is part of the business of insurance: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between insurer and insured; and (3) whether the practice is limited to entitles within the insurance industry.

Each of these factors is satisfied in this case. First, policyholders' risks would be transferred to Kentucky Central through insurance sales based upon the alleged misrepresentations regarding the financial stability of the insurance company. Second, representations to potential policyholders and their agents of the financial condition of an insurance company and its consequent ability to pay claims is an integral part of the relationship between the insured and the insurer. Finally, the offer and purchase of insurance policies is certainly a practice which is generally limited to the insurance industry.

Plaintiffs have attempted to avoid preemption under the *Royal Drug* test by characterizing the activities of Kentucky Central as improper lending and investment which is unrelated to risk spreading, is not directed to the relationship between insurer and insured and which is certainly not limited to the insurance industry. This argument fails, however, since, as discussed above, their RICO claims are not about such improper lending but, rather, allege a scheme to fraudulently induce agents and customers to purchase Kentucky Central policies despite their financial instability. The improper investment may have been a cause of the financial instability that led to the scheme, but it is not the substance of the RICO action.

Thus, the allegedly fraudulent scheme of Kentucky Central to induce agents to continue to sell policies and to induce customers to purchase policies is within the "business of insurance" as that term is used in connection with McCarran–Ferguson Act preemption.

### c. California Has Enacted Laws Governing Activity Complained of:

California has enacted laws governing the activities complained of in Plaintiffs' RICO claims. Section 790 of The Unfair Practices Act in the California *Insurance Code* prohibits certain unfair methods of competition and unfair and deceptive acts or practices in the business of insurance including, "the making of any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, ... the making ... of any statement ... with respect to the business of insurance or with respect to any person in the conduct of his or her insurance business, which is untrue, deceptive, or misleading, and which is known, or which by the exercise of reasonable care should be known to be untrue, deceptive, or misleading...." In addition, the *Insurance Code* regulates the financial reporting and disclosures made by insurance companies. *See* Sections 900 and 900.2. The *Insurance Code* also contains enforcement remedies and penalties for violations of its requirements.

The allegations of the RICO claim are well within the parameters of the regulation provided in the California *Insurance Code*.

### d. Application of RICO Would Impair, Invalidate or Supersede California's Regulations:

The application of a federal statute to matters regulated by state insurance law would arguably impair state law. For instance, RICO violations include treble damages and attorneys' fees. The California Legislature has not provided such remedies for misrepresentations regarding an insurance company's financial condition. In fact, applying RICO would nullify the state's determination of the appropriate remedies for certain conduct and would supersede remedies and regulatory supervision provided by California law. In addition, California's comprehensive regulatory supervision of insurers' financial conditions would be undermined and disrupted if agents and policyholders were permitted to assert federal RICO claims based upon allegations of financial nondisclosure.

Thus, this court finds that the RICO claims must be dismissed from these actions as they are preempted by the provisions of the McCarran–Ferguson Act.

Defendants have put forward additional grounds warranting dismissal of the RICO claims from this action including the lack of damages, absence of an enterprise separate from the defendant, and the failure to adequately plead a conspiracy. Because the decision to dismiss the RICO claims on the grounds of McCarran–Ferguson preemption eliminates the RICO claim from these actions the court does not reach the merits of the other grounds offered by the Kentucky Central.

### 2. Libel Claims:

In their complaints Plaintiffs claim that they were libeled by several letters sent by Kentucky Central to its policyholders in which Kentucky Central accused Plaintiffs of engaging in illegal, unethical, and improper conduct for their own benefit and that those accusations were false when written and were published by Kentucky Central because of its ill will.

California Civil Code, Section 45 provides: Libel is a false and unprivileged publication by writing ... which exposes any person to hatred, contempt, ridicule, obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

The letters do not explicitly include the allegations listed by Plaintiffs in their complaints. One of the letters, dated March 3, 1992 was written to Southern California policyholders and did not mention plaintiffs. Plaintiffs' exclusive territory was Northern California. Plaintiffs allege that this letter pertains to LeDuc and Tarnofsky, but provide no explanation for this claim. Given the fact that the Plaintiffs were not involved with Southern California policyholders it is difficult to imagine how a letter to those people which did not explicitly mention LeDuc or Tarnofsky would be interpreted to pertain to them.

The March 3, 1992 letter is the weakest of the three documents supporting

the libel claim, however. There are other letters dated March 4, 1992 and February 12, 1992 which do specifically mention LeDuc and Tarnofsky. The letters do not explicitly allege any misconduct on the part of these individuals but they do express concern that certain people are engaging in improper conduct in connection with the insurance company. The vague statements of possible misconduct following the opening paragraph of the letters which state that LeDuc and Tarnofsky are no longer associated with Kentucky Central may be sufficient to establish libel. Consequently, Plaintiffs claims of libel are not dismissed.

Defendants claim that even if the letters support a claim for libel the claims should be dismissed because the letters from Kentucky Central to policyholders were privileged as communications between interested persons. *See Civil Code* Section 47(c). Plaintiffs have alleged that the statements were made with malice, however, which defeats the conditional privilege for communications between interested persons. Although the letters do not provide strong evidence of libel, the libel claims will not be dismissed for failure to state a claim.

3. Fraud and Misrepresentation Claims:

■ Defendants claim that the common law fraud and misrepresentation claims are defective because they have not been pled with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. This Rule requires that the complaint provide the circumstances constituting the fraud, including the time, place and manner of each fraud, plus the role of each defendant in each scheme. *Lewis v. Sporck*, 612 F.Supp. 1316, 1324–25 (N.D.Cal.1985).

Plaintiffs have supplemented their fraud allegations with detail and supporting exhibits. The claims will not be dismissed for failure to plead with particularity.

■ In addition, Kentucky Central claims that the fraud and misrepresentation claims should be dismissed because Plaintiffs have failed to allege how they were damaged by the fraud. Although it may be difficult to prove at trial, however, Plaintiffs have alleged that their business interests were harmed by the alleged fraudulent conduct of Kentucky Central and its officers and directors. Thus, they have pled damages sufficient to defeat this motion to dismiss.

C. *Motions to Strike Portions of LeDuc and Tarnofsky Complaints:*

Kentucky Central asks that certain portions of the complaints filed by LeDuc and Tarnofsky be struck pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Although the motions address different complaints, Kentucky Central has offered identical justifications for their requests in both motions and therefore, the two motions will be discussed together.

■ Rule 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter". Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). Evidentiary allegations are not usually proper pleading, but allegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant. *Fuchs Sugar & Syrups, Inc. v. Amstar Corp.,* 402 F.Supp. 636, 637–638 (S.D.N.Y.1975).

■ Where allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken. *Bloombury Woolen Company v. Moosehead Woolen Mills,* 109 F.Supp. 804, 806 (D.Me.1953). Under the liberal federal pleading rules notice and clarity of claims is all that is required. *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1337 (N.D.Cal.1991).

Kentucky Central asks that the court strike a portion of Paragraph 29 of the LeDuc complaint and Paragraph 24 of the Tarnofsky complaint. These allegations state that the plaintiff "is informed and believes that certain members of Kentucky Central's Board of Directors, including defendants

Burnett, Schaeffer and Hembree may have engaged in improper and unlawful actions with Kentucky Central assets and may have had interests that were adverse to Kentucky Central agents...."

Kentucky Central claims that this allegation is fatal because it is framed as a question rather than an assertion of fact. They claim that it is an open-ended, conditional allegation and is consequently meaningless and should be stricken. Their request must be denied, however, since the disputed language is part of a longer allegation that cites specific acts of misconduct by the board.

Kentucky Central also seeks to strike various other portions of the complaints on the grounds that they are contradicted by the evidentiary material supplementing the complaint. In each case the evidentiary materials do not directly contradict the claims and therefore there is no reason to strike the allegations at this time.

■■■ Finally, Kentucky Central seeks to strike the reference in Paragraph 1 of the Prayer for Relief in each complaint which states that "[t]his action be maintained on behalf of the California general public". Defendant Kentucky Central claims that such a statement is inappropriate given the nature of these cases and the relief sought. Plaintiffs defend this language by citing to Sections 17204 and 17535 of the California Business and Professions Code which specifically provide that injunctive relief and restitution may be sought by any person acting for his own interest or the general public for the violation of California's unfair business practice laws.

Although there is no request for injunctive relief in this action, Plaintiffs have requested restitution for all the members of the public injured by the alleged fraud perpetrated by Kentucky Central. Plaintiffs have failed, however, to provide any specifics regarding which members of the general public are to be included in this action and what restitution is sought on their behalf. In addition, although the relief requested is termed restitution, Plaintiffs have not explained how it is to be distinguished from damages which are not recoverable under these sections. *See Industrial Indem. Co. v. Santa Cruz County*

*Superior Court,* 209 Cal.App.3d 1093, 257 Cal.Rptr. 655 (6 Dist.1989); *Newport Components v. NEC Home Electronics,* 671 F.Supp. 1525 (C.D.Cal.1987).

Thus, this court will grant Plaintiff's motion to strike the reference to the general public under Rule 12(f) subject to repleading by Plaintiffs with more specificity to inform the court and the defendant what restitution is to be obtained on behalf of which members of the general public.

## CONCLUSION

In light of the foregoing,

(1) the motion to dismiss the Individual Defendants for lack of personal jurisdiction will be granted with respect to Defendants Hembree, Surmick, Gunn, Sammartin, Preston, Schaeffer and Rampulla, but denied with respect to Defendant Burnett;

(2) Kentucky Central's motion to dismiss the RICO claims is granted on the grounds that those claims are barred by the McCarran–Ferguson Act;

(3) Kentucky Central's motion to dismiss state claims for misrepresentation and fraud is denied;

(4) Kentucky Central's motion to dismiss the libel.claims is denied;

(5) Kentucky Central's motion to strike portions of the complaints is granted in part and denied in part.

IT IS SO ORDERED.