Gabriel James DeLEON and Shawna L. DeLeon, Plaintiffs,

v.

WELLS FARGO BANK, N.A., successor by Merger to Wells Fargo bank Southwest, N.A. (formerly known as Wachovia Mortgage, FSB and World Savings Bank, FSB); NDEX West, LLC and does 1–50, inclusive, Defendants.

Case No. CV 10–01390 JF (HRL).

United States District Court, N.D. California, San Jose Division.

June 9, 2010.

David Edward Pipal, Esq., Paxton & O'Brien LLP, Attorneys at Law, Hollister, CA, for Plaintiffs.

Mark Tyler Flewelling, Esq., Michael Rapkine, Yaw–Jiun Wu, Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, Pasadena, CA, for Defendants.

## ORDER[1] DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART

JEREMY FOGEL, District Judge.

Plaintiffs Gabriel and Shawna DeLeon (the "DeLeons") move to remand the instant action to the San Benito Superior Court for lack of diversity jurisdiction pursuant to 28 U.S.C. § 1332, *et seq.* Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) and to strike portions of the complaint pursuant to Fed. R.Civ.P. 12(f). The Court has considered the moving and responding papers and the

---

1. This disposition is not designated for publication in the official reports.

oral arguments of counsel presented at the hearing on May 28, 2010. For the reasons discussed below, the motion to remand will be denied, and the motion to dismiss will be granted, with leave to amend in part.

## I. Background

### A. Factual History

In 2004, the DeLeons purchased a home in San Benito County (the "Property") for $804,000, secured by a note to World Savings Bank, FSB in the amount of $562,800. Compl. ¶ 10. In 2007, World Savings offered the DeLeons the option of refinancing their existing loan because the home had appreciated in value. Compl. ¶ 11. The DeLeons and World Savings entered into a refinance agreement in which the note was refinanced for $787,500 subject to a four-year adjustable rate mortgage. Compl. ¶ 11. Beginning in August 2008, the DeLeons were unable to afford the payments on the new note. Compl. ¶ 12. They allege that at that point the new loan balance was greater than the market value of the Property. Compl. ¶ 12.

In or around September 2009, after World Savings had changed its name to Wachovia Mortgage, FSB and then merged into Wells Fargo Bank, N.A., Mot. to Dismiss 1:16–18, a notice of default was recorded and sent to the DeLeons. Compl. ¶ 13. Thereafter and through December 2009, the parties engaged in discussions about a possible loan modification. Compl. ¶ 13. The DeLeons allege that Wells Fargo expressed confidence that a loan modification could be worked out once all necessary documents had been received from the DeLeons. Compl. ¶ 14.

On January 16, 2010, the DeLeons were told by a realtor that the Property had been sold at a trustee's sale in which Wells Fargo was the purchaser. Compl. ¶ 15. The DeLeons allege that even after the sale, a Wells Fargo agent continued to tell them that there would be no foreclosure because parties still were engaged in the loan modification process. Compl. ¶ 15. Following the January sale, Wells Fargo gave the DeLeons notice to vacate the Property within thirty days. Compl. ¶ 18.

The DeLeons allege that they never received notice of a trustee's sale and that the notice of such a sale never was posted on the Property. Compl. ¶ 19. They also allege they never were advised by Wells Fargo that they had a right to request a meeting or provided a toll-free number to find a HUD–Certified Housing Counseling Agency. Compl. ¶ 19.

### B. Procedural History

On February 10, 2010, the DeLeons filed suit in the San Benito Superior Court, asserting seven claims for relief: (1) wrongful foreclosure under California Civil Code § 2924; (2) cancellation of trustees' deed; (3) violation of California Business and Professions code § 17200, *et seq.;* (4) violation of California Civil Code § 2923.5; (5) predatory lending under California Financial Code §§ 4973 and 4979.6; (6) quiet title; and (7) preliminary and permanent injunction. In April 2010, Defendant removed the action to this Court pursuant to pursuant to 28 U.S.C. § 1332, *et seq.*

## II. Motion to Remand

The DeLeons are citizens of California, and Wells Fargo is a nationally-chartered bank, with its main corporate office in South Dakota. Pls. Reply to Mot. 8:10. Wells Fargo also maintains a principal place of business in San Francisco, California and does business throughout the state. *See Mount v. Wells Fargo Bank, N.A.,* No. CV 08–6298 GAF (MANx), 2008 WL 5046286, at *1, 2008 U.S. Dist. LEXIS 98193, at *3 (C.D.Cal. Nov. 24, 2008). *See also Wells Fargo Bank, N.A. v. Siegel,* No. 05 C 5635, 2007 WL 1686980, at *1, 2007 U.S. Dist. LEXIS 41886 at *2 (N.D. Ill. June 8, 2007). A threshold legal question is whether Wells Fargo is a citizen of

California under 28 U.S.C. § 1348 because its principal place of business is in California.

## A. Legal Standard

Federal courts are courts of limited jurisdiction. That jurisdiction includes civil actions between "citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1) (2006). A non-natural person such as a corporation may be a citizen of two different states. 28 U.S.C. 1332(c) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business....") Here, this Court has jurisdiction only if Wells Fargo's citizenship is diverse from the DeLeons'. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (stating that diversity jurisdiction requires "complete diversity of citizenship"). Any moving party asserting diversity jurisdiction bears the burden of showing that diversity exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Similarly, when an action has been removed from state court to federal court under 28 U.S.C. § 1441, there is an equally "strong presumption" against removal jurisdiction, unless the defendant can establish that removal was proper. *Gaus v. Miles*, 980 F.2d 564, 566 (1992). Any such doubt as to removability must be made in favor of remand to state court. *Id.*

28 U.S.C. § 1348 limits the citizenship of a national banking association to the state in which the association is "located."[2] Pri-or to the decision of the United States Supreme Court in *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006), lower courts had created several tests to determine the meaning of "located" with respect to the citizenship of a national bank. *See, e.g., Horton v. Bank One, N.A.*, 387 F.3d 426, 434 (5th Cir.2004) (bank's principal place of business determines whether there is citizenship); *World Trade Ctr. Prop., LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2d Cir.2003) (bank is a citizen of states where it maintains an office or bank branch).

In *Schmidt*, the Supreme Court reaffirmed that a national bank is a citizen of the state in which its main office is located. 546 U.S. at 313–14, 126 S.Ct. 941. However, it reversed the determination of the Fourth Circuit that "located" could be interpreted to mean that a national bank is a citizen of any state in which it maintains a branch office. *Id.* "[W]hile corporations ordinarily rank as citizens of at most 2 States, Wachovia, under the Court of Appeals' novel citizenship rule, would be a citizen of 16 States." *Id.* at 317, 126 S.Ct. 941. While the holding in *Schmidt* could be narrowly limited to a rejection of a "branch office" interpretation of § 1348, thus remitting dual citizenship based on a bank's principal place of business, lower courts since *Schmidt* have taken the view that the "main office" standard is the *only* way to determine the citizenship of a national bank. *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir.2006).

2. The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

### B. Wells Fargo is not a citizen of California

Relying on *Schmidt*, Wells Fargo contends that it is neither located in nor a citizen of California. The Court agrees. Plaintiffs argue that footnote 8 of *Schmidt* supports a conclusion that a bank may be "located" at a principal place of business, but it is clear from the entire text of the footnote that the Court expressed no such view:

> Context also matters in assigning meaning to the word 'established.' (Citation omitted). Given the character of the proceedings covered by the first paragraph of § 1348, (citation omitted), one might read 'established' as referring to the bank's main office as set forth in its articles of association. Other readings mentioned in Court of Appeals opinions are the bank's principal place of business and the place listed in the bank's organization certificate. *See Horton v. Bank One, N. A.*, 387 F.3d 426, 434 (5th Cir.2004); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 992 (7th Cir.2001). Because this issue is not presented by the parties or necessary to today's decision, we express no opinion on it.

*Id.* at 315 n. 8, 126 S.Ct. 941.

Moreover, in footnote 9, the Court recognized the imperfect parity between corporations and national banks:

> Congress has prescribed that a corporation 'shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.' 28 U.S.C. § 1332(c)(1). The counterpart provision for national banking associations, § 1348, however, does not refer to 'principal place of business'; it simply deems such associations 'citizens of the States in which they are respectively located.' The absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost

every case, as in this one, the location of the national bank's main office and of its principal place of business coincide.

*Id.* at 318 n. 9, 126 S.Ct. 941. Subsequently, in *Hertz v. Friend*, —— U.S. ——, 130 S.Ct. 1181, 1185, —— L.Ed.2d —— (2010), the Supreme Court has defined "principal place of business" under 28 U.S.C. § 1332(c)(1) as a corporation's "nerve center" where "the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 1185. By adopting such a definition, the Court implicitly furthered parity between state chartered banks and corporations and national banks.

The DeLeons rely upon *Mount v. Wells Fargo Bank, N.A.*, in which the district court found that Wells Fargo was a citizen of California for diversity purposes. No. CV 08–6298 GAF (MANx), 2008 WL 5046286, at *1–2, 2008 U.S. Dist. LEXIS 98193, at *4–5 (C.D.Cal. Nov. 24, 2008). However, a later district court decision in *Peralta v. Countrywide Home Loans*, No. C 09–3288 PJH, 2009 WL 3837235, 2009 U.S. Dist. LEXIS 112387 (N.D.Cal. Nov. 16, 2009), explicitly rejected *Mount* and adopted the holding in *Excelsior Funds, Inc. v. J.P. Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312 (S.D.N.Y.2006), that for purposes of diversity jurisdiction a national bank is a citizen of the state in which its main office as specified in its articles of association is located. *Id.* at *4–5, 2009 U.S. Dist. LEXIS 112387 at *13–14. *See also Wells Fargo Bank, N.A. v. WMR e-Pin, LLC*, No. 08–5472 (JNE/FLN), 2008 WL 5429134 *1, 2008 U.S. Dist. LEXIS 104558 *4 (D.Minn. Dec. 29, 2008) ("[T]he Court concludes that Wells Fargo Bank does not take the citizenship of the state of its principal place of business. Because Wells Fargo Bank is not a citizen of California, the Court rejects Respondents' assertion that complete diversity of citizenship does not exist.")

In the absence of controlling Ninth Circuit authority, this Court will decline Plaintiffs' invitation to apply a principal place of business test to Wells Fargo. Consequently, the Court concludes that Wells Fargo is a citizen of the state in which its main office, as specified in its articles of association, is located. *See Schmidt*, 546 U.S. at 318, 126 S.Ct. 941. Because complete diversity exists, the motion to remand will be denied.

## III. Motion to Dismiss

Wells Fargo moves to dismiss all of the DeLeons' claims as preempted by the Home Owners' Loan Act ("HOLA"). The Court agrees that the first, second, fifth, and seventh claims are preempted and cannot be saved by amendment. The motion will be granted with leave to amend with respect to the DeLeons' remaining claims.

### A. Legal Standards

#### 1. Rule. 12(b)(6)

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Leave to amend must be granted, unless it is clear that the complaint's deficiencies can-

not be cured by amendment. *Lucas v. Dep't. of Corrs.*, 66 F.3d 245, 248 (9th Cir.1995).

#### 2. Preemption Under HOLA

"[T]he laws of the United States ... shall be the supreme law of the land; ... any Thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const., art. VI, cl. 2. The Constitution through the Supremacy Clause allows for federal law and regulations to preempt state laws, however, "[i]t will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so." *Schwartz v. Texas*, 344 U.S. 199, 202–03, 73 S.Ct. 232, 97 L.Ed. 231 (1952). Such intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). A federal agency regulation also may result in preemption. *Gibson v. World Savings & Loan Assn.*, 103 Cal.App.4th 1291, 128 Cal.Rptr.2d 19, 23 (2002). However, in the regulatory context, courts consider whether (1) the agency intended its regulation to have a preemptive effect, and (2) the agency acted within the scope of its congressionally delegated authority by issuing the preemptive regulation. *de la Cuesta*, 458 U.S. at 154, 102 S.Ct. 3014. If these conditions are met, "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Id.* at 153, 102 S.Ct. 3014. The construction of statutes, legislative intent, interpretation of administrative regulations are all questions of law. *See Bravo Vending v. City of Rancho Mirage*, 16 Cal.App.4th 383, 20 Cal.Rptr.2d 164, 166–67 (1993).

While preemption analysis begins with the presumption that Congress did not

intend to supplant state law, this presumption is "not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). *See Bank of Am. v. City & County of San Francisco,* 309 F.3d 551, 558 (9th Cir. 2002). "Congress has legislated in the field of banking from the days of *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 325–26, 4 L.Ed. 579 (1819), creating an extensive federal statutory and regulatory scheme." *Bank of Am.,* 309 F.3d at 558. Similarly, Congress enacted the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 (2006), *et seq.,* to charter savings associations during a time of economic uncertainty for state-chartered savings associations. *See Silvas v. E\*Trade Mortg. Corp.,* 514 F.3d 1001, 1005–06 (9th Cir. 2008). HOLA was crafted in part to restore public confidence in a network of centrally regulated federal savings and loan associations. *Id.* Through HOLA, and its implementing regulation, 12 C.F.R § 560, Congress authorized and delegated power and authority to the Office of Thrift Supervision ("OTS") to regulate and govern "every federal savings and loan association from its cradle to its corporate grave." *de la Cuesta,* 458 U.S. at 145, 102 S.Ct. 3014. *See* 12 C.F.R. §§ 500.1(a) (the OTS "is responsible for the administration and enforcement of the [HOLA]"), 500.10 (the functions of the OTS are to "charter, supervise, regulate and examine Federal savings associations.").[3]

As relevant to the current motion, HOLA sets forth "without limitation" a list of illustrative examples of the types of state laws that are expressly preempted. § 560.2(b):

> The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . .
>
> Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> . . .
>
> Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

Section 560.2(b)(4), (b)(9)-(10).

However, HOLA preemption of state laws affecting federal savings associations is not absolute. Section 560.2(c) carves out state laws that "only *incidentally* affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." (Emphasis added). The Ninth Circuit has given further guidance with respect to whether a state law is preempted by HOLA:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R.

---

**3.** Recognizing a clear intent for regulatory preemption under § 560.2(a):

> OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA.

§ 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (quoting OTS, *Final Rule*, 61 Fed. Reg. 50951, 50966–67 (Sep. 30, 1996)).

**B. Discussion**

Wells Fargo notes that at the time the loan was made to the DeLeons, "World Savings Bank, FSB was a federally chartered savings bank organized and operating under HOLA" and observes correctly that the same preemption analysis would apply to any alleged conduct after November 1, 2009, when the lender merged into a national banking association.

**1. Wrongful Foreclosure (Claim 1)**

■ The DeLeons allege that prior to the non-judicial foreclosure and sale, Wells Fargo violated California Civil Code § 2924 by failing to give them notice and to publish, post and record said notice. In *Stefan v. Wachovia*, another court in this district concluded that a claim based on comparable facts was preempted by HOLA. No. C 09–2252 SBA, 2009 WL 4730904, at *2–3, 2009 U.S. Dist. LEXIS 113480, at *7–8 (N.D.Cal. Dec. 7, 2009). Judge Armstrong held that the plaintiff's claim of misconduct surrounding the foreclosure proceedings plainly involved 'processing, origination, sale or purchase of … mortgages' and 'disclosure....' *Id.* at *3, 2009 U.S. Dist. LEXIS 113480 at *9. Because § 2924 would regulate Wells Far-

go's disclosure of credit related documents and its ability to participate and service its mortgages, this Court reaches the same conclusion.

**2. Violation of California Business and Professions Code (Claim 3)**

■ The DeLeons allege violations of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 *et seq.* Specifically, they complain that they were given false assurances that their loan modification with Wells Fargo would be approved and that there would be no foreclosure while the loan modification process was pending. Comp. ¶ 33. While this claim invokes a broad state law of general applicability, the Ninth Circuit recognized in *Silvas* that HOLA preemption still may apply. 514 F.3d at 1005. The court expressly declined to analyze the UCL under 560.2(c). *Id.* Accord *Casey v. Federal Deposit Insurance Co.*, 583 F.3d 586, 593–94 (8th Cir.2009); *State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 345 (6th Cir.2008) ("[N]othing in the text of [ ] § 560.2 indicates that it only preempts state laws that directly regulate federal savings associations."); *State Farm Bank, FSB v. District of Columbia*, 640 F.Supp.2d 17, 23 (D.D.C.2009).

The DeLeons rely on *Gibson v. World Savings and Loan Association*, 103 Cal. App.4th 1291, 1306, 128 Cal.Rptr.2d 19 (2002), to support their assertion that there is no preemption, but *Gibson* is factually distinguishable. In that case, the plaintiffs alleged that borrowers with secured loans made or serviced by the defendant, a national savings association, were forced to pay for more expensive property insurance selected by the defendant after the borrowers had failed to maintain their own bank approved insurance on the secured property. 128 Cal.Rptr.2d at 21. The plaintiffs claimed that this practice

violated the terms of the their deeds of trust, and they also made related breach of contract claims. *Id.* In holding there was no HOLA preemption of § 17200, *et seq.*, the court noted that "the duties to comply with contracts and the laws governing them and to refrain from misrepresentation ... are principles of general application. They are not designed to regulate lending and do not have a disproportionate or otherwise substantial effect on lending." *Id.* at 1303–04, 128 Cal.Rptr.2d 19.

*Silvas* and *Gibson* are consistent in holding that a law of general applicability that does not directly affect a national bank's lending is not preempted by HOLA. In this case, the DeLeons provide only a conclusory statement that they were deceived when Wells Fargo foreclosed on the property while their loan modification still was pending. Compl. ¶ 33. While they assert that there was an agreement to complete the loan modification, Compl. ¶ 33, they allege only that Wells Fargo expressed "confidence that the modification would be approved once all documents had been received ...." and "received encouragement from WELLS FARGO that the loan modification would be approved." Compl. ¶¶ 14–15. Without more, such statements do not create a duty or contract to modify a loan. *Huerta v. Ocwen Loan Servicing, Inc.,* No. C 09–05822(HRL), 2010 WL 728223, *4–5, 2010 U.S. Dist. LEXIS 17970, *11–12 (N.D.Cal. Mar. 1, 2010). However, because the DeLeons may be able to allege additional facts more analogous to those alleged in *Gibson,* leave to amend will be granted.

### 3. Violation of California Civil Code § 2923.5 (Claim 5)

■ The DeLeons allege that Wells Fargo violated California Civil Code

§ 2923.5 by failing to comply with statutory notice requirements. Compl. ¶ 3 8. As discussed above, § 2923.5 affects the servicing of mortgages[4], that implicates HOLA's express preemption of state laws regulating the "processing" and "servicing" mortgages. Several other district courts within the Ninth Circuit have concluded that such claims are preempted. *See Parcray v. Shea Mortg., Inc.,* No. CV–F–09–1942 OWW/GSA, 2010 WL 1659369, at *9 (E.D.Cal. Apr. 23, 2010) (concluding that HOLA preempts Section 2923.5 because it "concerns the processing and servicing of [the plaintiff]'s mortgage...."); *Odinma v. Aurora Loan Servs.,* No. C–09–4674 EDL, 2010 WL 1199886, at *8 (N.D.Cal. Mar. 23, 2010) (concluding that a "Section 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage and is preempted by HOLA"); *Murillo v. Aurora Loan Servs., LLC,* No. C 09–00503 JW, 2009 WL 2160579, at *4 (N.D.Cal. July 17, 2009) (same). *See also Stefan,* 2009 WL 4730904, at *3, 2009 U.S. Dist. LEXIS 113480, at *9 ("Plaintiffs' claims of misconduct surrounding the foreclosure proceedings clearly fall under the preemption provisions for 'processing, origination, sale or purchase of ... mortgages' "). The reasoning of these cases is persuasive.

### 4. Predatory Lending (Claim 6)

■ The DeLeons allege that Wells Fargo engaged in predatory lending in violation of California Financial Code §§ 4973 and 4979.6 when it encouraged them to refinance their loan in September 2007. Compl. ¶ 45. Wells Fargo argues that to the extent that this claim is not preempted by HOLA, it is time-barred. The Court agrees that the claim is time-

---

**4.** *See, e.g.* Cal. Civ.Code § 2923.5(a)(1) (2010) ("A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default ... until 30 days after initial contact is made ... or 30 days after satisfying the due diligence requirements....")

barred. California Code of Civil Procedure § 340 provides a one-year limitation period for statutes such as §§ 4973 and 4979.6 that do not prescribe a different period. The instant action was filed on February 10, 2010, more than two years after the refinanced loan was consummated. Compl. ¶ 11.

### 5. Cancellation of Trustee's Deed and Quiet Title (Claim 2 and 7)

██ The DeLeons seek to cancel the deed resulting from the trustee's sale or in the alternative to quiet title in their favor notwithstanding the deed recorded by Wells Fargo on January 20, 2010. These claims are premised on DeLeons' claims of wrongful foreclosure and defective notice, which are preempted by HOLA.

### 6. Preliminary and Permanent Injunction (Claim 4)

The DeLeons seek a preliminary and permanent injunction enjoining Wells Fargo from evicting them from the Property. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the Plaintiffs is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.' " *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter,* 129 S.Ct. at 374). The issuance of a preliminary injunction is committed to the discretion of the district court. *Indep. Living Ctr. v. Maxwell–Jolly,* 572 F.3d 644, 651 (9th Cir.2009).

██ Here, the DeLeons have failed to show that they are likely to succeed on the merits with respect to their state law claims. Their claims are either preempted by HOLA, time-barred, or insufficiently pled. Accordingly, the request for a preliminary injunction will be denied. The claim for permanent injunction relief will be dismissed without prejudice pending amendment of the UCL claim.

### IV. Motion to Strike

Pursuant to Federal Rules of Civil Procedure 12(f), the Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation. *See LeDuc v. Ky. Cent. Life Ins. Co.,* 814 F.Supp. 820, 830 (N.D.Cal.1992). Allegations "supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *Id.* Moreover, allegations which contribute to a full understanding of the complaint as a whole need not be stricken. *See id.*

Defendant moves to strike several portions of the complaint, Def's. Mot. to Strike 2:2–25. Because the Court has granted Wells Fargo's motion to dismiss all of the DeLeons' claims, the motion to strike will be terminated as moot.

### V. ORDER

Good cause therefor appearing:

(1) The motion to remand is DENIED.

(2) The motion to dismiss is GRANTED, WITH LEAVE TO AMEND IN PART.

(3) The motion to strike is TERMINATED as moot.

Any amended pleading shall be filed and served within twenty (20) days of the date this order is filed.

IT IS SO ORDERED.